## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT
## EASTERN DIVISION

LIEUTENANT SHARON ROBINSON,  )
DIRECTOR WINONA HANNAH,  )
SERGEANT MARCELLA SAWYER,  )
TELECOMMUNICATIONS  )
CARLA KIMBER, SERGEANT VERONICA  )
HARRIS and OFFICER LAWANDA  )
BURRAS,  )
   )
Plaintiffs  )
   )   Case No. 19-cv-395
  -v-  )
   )
CHICAGO STATE UNIVERSITY, CAPTAIN  )
JAMES MADDOX, individually and in his  )
official capacity, and LIEUTENANT CHARLES  )
STEWARD, individually and his official  )
capacity,  )
   )
Defendants  )

## **COMPLAINT**

NOW COMES Plaintiffs by and through their attorneys, The Walters Law Firm, and hereby

submit this Complaint against Defendants, Chicago State University, Captain James Maddox and

Lieutenant Charles Steward, seeking monetary and injunctive relief. In support thereof, Plaintiffs

states and alleges the following:

### **Introduction**

1.  This is an action for gender discrimination pursuant to 42 U.S.C. § 2000e et seq. (Title

VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1981.

### **Jurisdiction**

1

2. Jurisdiction of this matter arises under Title VII of the Civil Rights Act of 1964 at 42 U.S.C. 2000e.

## Parties

3. Plaintiffs were at all relevant time employees of Chicago State University and worked in Chicago, Illinois.

4. Defendant Chicago State University is a state university in Chicago, Illinois that receives both state and federal funding.

5. Individual Defendants were at all relevant times employees of Chicago State University and worked in Chicago, Illinois.

## Factual Allegations

6. From 2009 to the date of filing, all Plaintiffs were employed under the direct supervision of Defendant Captain James Maddox.

7. Plaintiffs have experienced ongoing harassment from coworkers and supervisors based on their gender. The discrimination and harassment have been regular and routine, and often occurs several times a week.

**Harassment and Discrimination Against the Plaintiffs as a Whole**

**I - Disparate Treatment of Female Officers**

8. In 2009, all of the administrative work, such as timekeeping and scheduling, was given to the female officers.

9. Later that year, Defendant Maddox became the acting Chief of Police for approximately eighteen (18) months. The atmosphere in the department shifted from male-dominated to a complete divide between the men and women.

10. For example, the men would be rewarded for every good arrest, but if a female did the same, she would get no commendation, which is still the practice today.

    a. In 2009, Plaintiff Burras was the only female officer on her shift. She was the arresting officer in a robbery case. Instead of rewarding her, Defendant Maddox gave commendations to two male officers. When confronted by Defendant Maddox a week later as to her attitude, she inquired as to why she was not recognized and Defendant Maddox stated that he could not give everyone an award.

    b. Additionally, Defendant Maddox allowed a male subordinate to take credit for Plaintiff Robinson's work the (Annual Security Report) while she was the Clery Compliance Officer.

11. Defendants have continuously excused the male officers' conduct while the female officers received reprimands for the slightest incident. For example:

    a. Sergeant Wendell Mack struck a pedestrian while on patrol and no action was taken against him whereas Plaintiff Burras struck a fixed object while on patrol and was reprimanded.

    b. Plaintiff Kimber used a fax machine and was required to pay for the fax after being written up while Sergeant Mack had no action taken against him for using the fax machine.

    c. Officer Peter Scalone destroyed at least four vehicles but no action was taken against him whereas Plaintiff Burras was given a written reprimand after one accident.

d. Throughout 2018 so far, there were four separate accidents that resulted in damage to state property. Each one of these accidents involved male officers and none of the officers were reprimanded, investigated, or suffered any consequences for the accidents or damage caused. On the other hand, Plaintiff Burras was involved in a similar accident and a full investigation was brought against her, after which she was disciplined.

12. Additionally, female officers were more scrutinized for doing their jobs than their male counterparts.

a. Plaintiff Burras has been continuously monitored regarding who she eats with and talks to as well as when she is allowed in the station while her male cohorts are never questioned on the same topics.

b. In 2014, Defendants ordered Plaintiff Robinson to reprimand Plaintiff Burras without investigation upon the belief that she failed to appear in court. After Plaintiff Robinson investigated the claim, she found that Officer David Harris was the officer who failed to appear in court. She told the Defendants, but Defendants ordered Plaintiff Robinson to do nothing against the male officer because he had a good reason for failing to appear in court. This incident resulted in a lawsuit.

c. In addition, Defendant Maddox told Plaintiff Robinson that she had to provide a progress report every day. No other officer has been expected to provide a progress report. On August 22, 2018, the new Chief of Police told Plaintiff Robinson to report directly to him rather than to Defendant Captain Maddox.

d.  On or about February, 16, 2018, Plaintiff Hannah had a report filed against her for assault due to a verbal altercation that occurred over email. Plaintiff Hannah was suspended for two weeks without pay. In a more extreme incident, two male officers engaged in a physical altercation while armed and no disciplinary action was taken against either of them.

e.  On or about March 2018, Plaintiff Harris provided written notification, rather than a verbal notification, after a medical emergency, as was the practice at the time. She received a verbal reprimand, which went in her file, for failing to call. However, around the same time, male officer Sgt. Calvin Robins committed a similar offense and did not receive a reprimand, but was simply informed of the change in procedure.

f.  On or about April 2018, Plaintiff Hannah was placed under investigation and suspended again for reportedly failing to purchase a parking permit even though she in fact purchased the permits. Defendants also alleged that Plaintiff Hannah did not make two male midnight police officers purchase their parking permits. Two male officers, who had also not purchased parking permits at the same time, were not reprimanded or put under investigation. Instead, parking passes were simply bought for them and no issue was made. Plaintiff Hannah was allowed to return to work on May 29, 2018, but as of the date of this filing is still under investigation.

g.  On or about May 2018 CSU Human Resources Director Lindsay Hamilton removed Defendant Maddox from overseeing and supervising the Parking

Department and Plaintiff Hannah after learning of the harassment and failed attempts to terminate Plaintiff Hannah by Defendant Maddox.

h. On or about February 2016, Plaintiff Harris had several meetings in which Chief Walsh, Defendant Maddox and Defendant Steward attended regarding the signing of some investigative reports. During the third meeting, Plaintiff Robinson was there. Plaintiff Robinson told Plaintiff Harris that she was probably getting written up because Defendant Maddox was alleging insubordination. The next day Plaintiff Harris received a 5-day suspension.

13. Plaintiff Harris has been told by Defendant Steward that Defendant Maddox did not like her because she was not a "yes woman" and asked too many questions. Defendant Maddox was very aggressive towards Plaintiff Harris when confronted, but not aggressive when confronted by any of the male officers.

14. In 2011, Watson became the Chief of Police and he outwardly divided the work assignments based on the individual's gender.

15. In 2011, Plaintiff Robinson was inexplicably forced to change her schedule from 9am-5pm to 2pm-10pm while a male counterpart was able to stay on his shift. When Plaintiff Robinson questioned the change, she was ignored.

16. Plaintiff Robinson remained on the 2pm to 10pm shift for 8 years but was still required to perform all the administrative duties, whereas Defendant Steward, when put on the late shift, was not expected to do any administrative work.

17. Upon information and belief, female officers were passed over for promotions and those promotions were given to the male officers. Specifically,

a. In June 2014, a Sergeant's position became available and there were only two candidates, Plaintiff Sawyer and Anthony Goodman. During that time, Defendants told all the male officers that if Sawyer became Sergeant, they would have another "Sharon" (Plaintiff Robinson) and they do not need any more females telling the male officers what to do.

b. In 2016, Plaintiff Burras was sent to detective training two weeks after training had already began. Plaintiff Burras was denied to test and graduate while a male counterpart, Peter Scalone, who missed the same amount of time (or more) was allowed to test and graduate the program.

c. In 2017, Plaintiff Burras successfully completed detective training for the second time but she did not get the option to shadow the detectives at CSU. However, Peter Scalone, a male officer received the position. Mr. Scalone initially did not want to take the position and work the hours of 9:00am to 5:00pm so he asked to go back to his current shift of 7:00am to 3:00pm. Because the Defendants did not want any females in the Detective Division, Plaintiff Burras was never given the opportunity even after Mr. Scalone refused the position. Instead, Defendants Maddox and Steward allowed Mr. Scalone to keep his 7:00am to 3:00pm schedule even though Detective Division hours were 9:00am to 5:00pm. As of the date of this filing, no females are within the Detectives Division despite the fact that 85% of the campus is female.

18. In 2015, Defendant Maddox fought with the administration to remove Plaintiff Robinson as a Lieutenant falsely stating that he did not have a need for that position. (FOIA

Document) Defendant Maddox informed the administration that he was fine with any

decision to demote Plaintiff Robinson so long as himself and Defendant Steward

remained the status quo. As a result, Plaintiff Robinson was demoted from Lieutenant to

Sergeant for no reason and lost approximately ten percent of her salary, over $10,000.00.

19. Plaintiff Sawyer was promoted and given the title and responsibilities of Sergeant

Detective in June 2014. Defendant Maddox was upset with the promotion and in

retaliation he had the locksmith, Dan Chopp, change the locks on the investigator's office

and issued new keys to each investigator (all males) but Plaintiff Sawyer. Two of the

officers were issued keys while they were off campus at Detective's training and

Detective Jones was told by Defendant Maddox not to tell Plaintiff Sawyer about the lock

change. Defendant Maddox never issued Plaintiff a key or told her of the lock change

even though he saw her every day.

20. In October 2015, Defendant Maddox called Plaintiff Sawyer to his office and accused her

of failing to inspect and report damage to a vehicle. Plaintiff Sawyer explained that she

was investigating the damage right before being called to Defendant Maddox's office.

21. Defendant Maddox then showed Plaintiff Sawyer a stack of old investigative reports and

asked why she had not signed them. Plaintiff Sawyer stated Defendant Steward signed

them after Plaintiff Sawyer reviewed them. Defendant Maddox told the Chief Patricia

Walsh that Plaintiff Sawyer was responsible for signing the reports and that she failed to

do her job.

22. As a result of the paragraphs 20 and 21, Defendant Maddox requested Plaintiff Sawyer be

demoted. On or about through October 2015, Defendant Maddox was successful in his

request and had Plaintiff Sawyer removed from the position of Sergeant Detective

without documentation and her stipend taken away. She remained a Sergeant until she

was demoted again in 2016. She was not promoted back to Sergeant until October 15,

2017.

23. On or about March 27, 2015 Defendant Steward told Plaintiff Harris that the

administration implemented new stricter rules that were against the union contract.

Plaintiff Harris asked where it was coming from and he said it was just the

administration. Plaintiff Harris was the only one expected to follow the new rules.

24. Defendant Steward then asked Plaintiff Harris about the Mayoral Forum event that

happened on March 25, 2015. He reprimanded Plaintiff Harris for leaving officers outside

instead of bringing everyone inside for the event.

25. On or about May 6, 2015 Plaintiff Harris as the on-duty supervisor. She took the

complaint of a woman who stated that a male officer unnecessarily ejected pepper spray

into the grill of her vehicle, forcing her to exit the vehicle. Plaintiff Harris then turned the

complaint into Defendants Maddox and Steward.  Upon receipt of the complaint,

Defendant Steward did not reprimand the male officer. Instead, he gave Plaintiff Harris a

verbal reprimand and the male officer was never disciplined.

26. Defendant Maddox allowed overtime for only the male officers but never allowed

overtime for the female personnel.

    a.   On or about May 2017, Captain Maddox took away overtime from all of the

          above-named Plaintiffs, while the male officers, who were similarly situated,

retained their overtime pay. A complaint was filed with the University's EEOC Office, but nothing was done.

    b. On or about May 14, 2018, Defendant Maddox allowed a male officer to take overtime on third watch while simultaneously denying Plaintiff Kimber the overtime that was previously offered to her. To avoid Plaintiff Kimber's overtime, Defendants hired a new male dispatcher who was inadequately trained.

27. On or about December 2016, Defendant Maddox changed Plaintiff Harris's timecard without her knowledge. When Plaintiff Harris confronted Defendant Maddox, Defendant Maddox stated that he had every right to change the time card. Defendant Maddox falsely alleged that Plaintiff Harris threatened him and tried to attack him during this exchange. Plaintiff Robinson was present during the confrontation and no threat or attack happened. These false allegations resulted in plaintiff Harris receiving a 5-day suspension.

28. There have been ongoing attempts to prevent the Plaintiffs from communicating with each other. Specifically, starting in 2017, Plaintiffs Kimber and Burras have not been allowed to occupy the same space in the dispatcher's office, despite the fact that Burras would reasonably need to access that room because it has the most efficient computer for performing various tasks and to relieve Kimber for her break periods. The male officers' association with each other and their presence in the dispatcher's office is not monitored or regulated.

29. Plaintiffs have been demoted and/or had timecards or shifts changed without knowledge or explanation, whereas male counterparts have received promotions or shift changes upon requests. Specifically:

a. As previously mentioned, in December 2016, Defendant Maddox changed Plaintiff Harris's timecard without her knowledge.

b. In 2011, Plaintiff Robinson was inexplicably forced to change her schedule from 9:00am to 5:00pm to 2:00pm to 10:00pm while a male counterpart was able to stay on his shift. When Plaintiff Robinson questioned the change, she was ignored by Defendants. Plaintiff Robinson remained on the 2-10 shift for eight (8) years but was still required to perform all the administrative duties, whereas Defendant Steward did not have to perform any administrative duties when on the same shift.

c. On or about October 24, 2018, Defendant Maddox refused to allow Plaintiff Burras the opportunity to use one of the patrol vehicles to attend her scheduled training class, knowing that she did not have a personal vehicle. None of the male officers were ever questioned or denied the use of a patrol vehicle for training.

30. On March 2017, Defendant Maddox was the highest-ranking Lieutenant in the department. Defendant Maddox encouraged the male Sergeants to challenge Plaintiff Robinson's 21-year service to force her to lose additional money and seniority. Specifically:

a. On or about February 2017, Defendant Maddox deliberately sent an erroneous seniority roster to the Union (Metropolitan Alliance of Police Chapter #297) demanding the removal of Plaintiff Robinson and Plaintiff Harris from their rightful line of seniority that had been acknowledged for over 14 years.

b. On or about March 1, 2017, Defendant Maddox received a "Cease and Desist" letter from plaintiffs Robinson and Harris. On March 8, 2017 Defendant Maddox

retaliated by sending an email to the entire university administrative staff with false accusations that plaintiff's Robinson and Harris harassed and created a hostile work environment. Plaintiff's Robinson and Harris were called bullies, unprofessional as well as inappropriate.

c. On March 8, 2017 an official complaint was filed against Defendant Maddox with the University EEOC Office. Nothing was done.

31. On or around May 2017, Plaintiff Robinson and Sergeant Mack resolved issues involving the scheduling of training troops via email. After resolving the issues together, Defendant Maddox sent Plaintiff Robinson a scathing and unnecessary email degrading her for questioning the male sergeant and accusing Plaintiff Robinson of creating a hostile work environment.

32. On or about July 31, 2017, Plaintiff Sawyer requested a copy of a homicide case file to prepare for court. Defendant Maddox never responded to Plaintiff's Sawyer's email. Seven days later, Defendant Maddox gave an incomplete copy of the case file to Sergeant Wilbert Norey. Plaintiff Sawyer sent a second email on August 12, 2017 to Defendant Maddox reminding him there was a loss of life. Defendant Maddox released the complete record to Sergeant Norey on August 14, 2017, on Plaintiff Sawyer's day off and one day before the case went to trial. Defendant Maddox never sent the documentation to Plaintiff Sawyer.

33. Plaintiffs Harris and Robinson have filed multiple grievances and spoken to the Union, EEOC, and Human Resources on multiple occasions about Defendant Maddox. However, no action was ever taken. Specifically,

a.   Plaintiff Robinson had to file a grievance against Defendant Maddox for refusing to offer Plaintiff Robinson overtime after offering it to the entire department.

b.   Plaintiffs Harris and Robinson were forced to bring the union in to stop the male officer from moving forward on removing and altering seniority.

c.   Plaintiff Harris also met with Human Resources Director, Rene Mitchell, in February 2016 to discuss the many issues within the Department. Mitchell did nothing.

d.   Plaintiff Harris also met with Patrick Cage, General Counsel for the University. He refused to meet with her after one meeting stating that he would sit down with the Chief and work on the changes. However, that meeting never took place.

## II - Attempts to Turn the Officers Against Each Other

34. Defendants Maddox and Steward started pitting women against each other and Plaintiff Robinson was unsure of who to trust.

35. In 2013, Defendant Maddox continuously told the male officers that Plaintiff Robinson was the leader of the "Girls Club." Simultaneously, Defendant Maddox told the male officers that Plaintiff Robinson did not get along with other women. As a result, the male officers began to resent and compete against the women in the department.

36. Starting around March 2014, Defendants tried to pit Plaintiff Robinson and Plaintiff Hannah against one another because Plaintiff Robinson was Plaintiff Hannah's immediate supervisor. For example, Defendant Steward would tell Plaintiff Hannah not to trust Plaintiff Robinson and that Plaintiff Robinson was out of control. At one point the

Defendants even told Plaintiff Hannah that Plaintiff Robinson had called Plaintiff Hannah a "bitch." Defendant Maddox encouraged and condoned this behavior.

37. In 2014, Defendants ordered Plaintiff Robinson to reprimand Plaintiff Burras without investigation upon the belief that she failed to appear in court for an automobile accident. After Plaintiff Robinson investigated the claim, she found that Officer David Harris was the officer who failed to appear in court. She told the Defendants, but Defendants ordered Plaintiff Robinson to do nothing against the male officer because he had a good reason for failing to appear in court. This incident resulted in a lawsuit in which the University/Central Management Service settled for $30,000.00.

38. On or about November 2016, Plaintiff Harris submitted Plaintiff Kimber's request for time off during the holidays. Maddox denied the time and falsely told Plaintiff Kimber that he never received the paperwork from Plaintiff Harris.

### III- Attempts to Humiliate the Female Officers

39. Plaintiffs are regularly referred to as being part of a "Girl's Club" by the male staff, particularly Defendant Maddox. Male employees who agreed with any of the women are derided as being part of the "Girl's Club."

40. In 2009, all of the administrative work, such as timekeeping and scheduling, was given to the female officers.

41. Additionally, Defendants Maddox and Steward started spreading rumors that the women were doing too much and outperforming the men. The individual Defendants started spreading rumors that the women would soon be taking over positions of power.

42. After defendants started negatively referring to Plaintiffs' as the "Girls Club," they stated they did not want any more females in leadership positions nor did they want the department to hire more women.

43. On or about June 2011, the Department started hiring new personnel. The Department hired several men and only one female. The newly hired male officers continued spreading rumors again that the women had created a "Girls Club."

44. Plaintiff Robinson, the only female lieutenant, was left out of all the meetings unless it required her typing up paperwork.

45. Additionally, the individual Defendants constantly referred to Plaintiff Robinson as a "glorified secretary."

46. Defendant Maddox also ordered the male sergeants (Norey & Robins) not to inform Plaintiff Robinson of the incidents that had taken place on the campus or on their shift because she was a "glorified secretary." Norey followed the order and informed his troops not to inform Plaintiff Robinson of incidents. Sergeant Pamelee Robinson was the only female who followed this order.

47. Defendant Steward further degraded and insulted all the women in the Department by calling them "whores" and "bitches." He was never reprimanded for this conduct. Defendant Maddox has condoned said behavior by allowing it to continue without incident.

48. On or about August 2015, Plaintiff Robinson was stripped of all of her administrative duties without any provocation or reasoning.

49. In 2015, Plaintiff Robinson was demoted from Lieutenant to Sergeant and lost approximately ten percent of her salary, which was over $10,000.00.

50. On or about April 5, 2018, Defendant Maddox had Plaintiff Robinson formally interrogated about Sergeants Norey's incident, wherein he pulled his duty weapon on Keith Taylor (one of his subordinates), while conducting an unauthorized knife training course. Despite the fact that Plaintiff Robinson was not involved in the complaints, nor the incident, Defendant Maddox falsely informed University Counsel that Plaintiff Robinson had police officers John Batson, Keith Taylor, and Wendell Mack make up a story to force Sergeant Norey to retire.

51. On or about May 21, 2013, Plaintiff Sawyer called an applicant for the investigation unit who became very rude to her on the phone. After the call, Plaintiff Sawyer informed Chief Ronnie Watson, Defendant Steward, and Defendant Maddox on the phone of the applicant's attitude. Based on this conversation, Chief Watson rescinded the applicant's offer of employment. Following this conversation, Defendant Maddox called a meeting with the Investigators which included Plaintiff Sawyer, Michael Jones, Eugene Heffner & Anthony Goodman. As soon as Plaintiff Sawyer entered the meeting, she was under verbal attack by Defendant Maddox stating that she had handled the call incorrectly and that she "sabotaged" the call because she was jealous of another male officer. Defendant Maddox's became so aggressive during the meeting that Investigator Jones stood up between Plaintiff Sawyer and Defendant Maddox.

52. On or about April 6, 2014 Plaintiff Sawyer passed the Sergeant's exam and was hoping to be considered for a promotion. Defendant Maddox halted this process by constant daily

attacks, lies, and innuendos. For example, Plaintiff Sawyer was accused of intentionally throwing a case by not collecting chemical evidence which required a HazMat team to remove. The chemical was photographed but not transported for safety reasons. Defendant Steward told Plaintiff Sawyer that Defendant Maddox told the Chief that Plaintiff Sawyer must have been related to the offender. Plaintiff Sawyer was questioned and later directed to write a To-From document confirming that she was not related to the offender. Because of this incident, Chief Watson informed Plaintiff Sawyer that she would not be considered for Sergeant.

53. On or about October 2015 while removing her belongings from the Investigator's Office, Plaintiff Sawyer noticed a picture of herself standing next to another male officer was hung on the wall. In this picture, Plaintiff's Sawyer's eyes appeared to have been stuck with pins. This picture remained hanging in a shared area, and every time Defendant Maddox walked past it, he would either do nothing or laugh. As of the date of this filing, the picture is still hanging inside the office.

54. On or about September 2017, a male officer told Plaintiff Sawyer she needed to "dummy down" because she was "shining too bright" and "overshadowing" the men in the department.

55. On or about February 21, 2018, during the grievance process, Defendant Maddox sent an email containing harsh, embarrassing, belittling, intimidating and false statements directed at Plaintiff Sawyer. He copied Plaintiffs Robinson and Harris as well as Defendant Steward, Sergeant Pamela Robinson, Sergeant Calvin Robins, and Sergeant Wendell Mack. This email was meant to damage Plaintiff's Sawyer reputation amongst

her superiors and coworkers. It was also done to prevent Plaintiff Sawyer from becoming the new Union President.

56. On or about August 24, 2016, Plaintiff Kimber had her ID and badge taken by Maddox during a routine audit in order to further examine the badge. After the audit's conclusion, Maddox did not return her badge for at least a year. It was not returned to her until his superior ordered him to do so.

57. On or about March 2018, Plaintiff Kimber received permission to use emergency time to deal with a personal emergency. However, Maddox later said that she was not allowed to use emergency time and instead put her leave down as sick time.

58. On or about April 2018, Plaintiffs Harris and Robinson were found to have hanging parking placards, which they paid for, instead of the normal decals that the University had switched to in 2016. They were placed under investigation by Captain Maddox for failing to pay for parking, despite the fact that records showed they paid. Through the course of the investigation, Plaintiff Hannah was accused of giving Harris and Robinson the placards despite the fact that she did not have access to placards because she was hired after they were phased out. Due to this, Hannah was threatened with termination, despite having nothing to do with the unfounded allegations and was forced to hire an attorney to defend her at a hearing.

### IV - Attempts to Preclude Female Officers

59. In June 2014, a Sergeant's position became available and there were only two candidates, Plaintiff Sawyer and Anthony Goodman. During that time, Defendants told all the male officers that if Sawyer became Sergeant, they would have another "Sharon"

(Plaintiff Robinson) and they do not need any more females telling the male officers what to do.

60. In July 2015, Defendant Maddox began taking measures designed to isolate Plaintiffs. For example,

    a. Defendant Maddox removed Plaintiff Robinson from any and all department training and exercises, including but not limited to emergency and daily operations, without provocation.

    b. Defendant Maddox as a form of retaliation removed Plaintiff Hannah from all parking related meetings without provocation.

    c. Plaintiff Robinson, the only female lieutenant, was left out of all meetings by Chief Walsh and the Defendants unless it required her typing up paperwork. As such, she was not informed of daily operations of the department.

    d. Plaintiff Robinson was taken off the notification list, while the new Chief was put on it within 2 days of his employment. Shortly thereafter, a male officer had been charged with Driving Under the Influence. Because of her removal from the notification list, Plaintiff Robinson was not put on notice of the charges. The male officer was not disciplined but he did later resign.

    e. Plaintiff Robinson wrote the Emergency Operations Plan, Defendant Maddox, intentionally and purposefully, did not include her on the notification list, nor was she included in any of the training (Table Top) and meetings even though she was part of the administration. Only the male officers (Lt. Charles Steward, Officer Eugene Heffner) were allowed to attend.

61. On or about August 24, 2016, Plaintiff Kimber had her ID and badge taken by Maddox during a routine audit in order to further examine the badge. After the audit's conclusion, Maddox did not return her badge for at least a year. It was not returned to her until his superior ordered him to do so

62. On or about May 9, 2018, Defendants Maddox and Steward went to "Procedure, Justice, and Police" training but Plaintiff Robinson was not allowed to attend. Plaintiff has not received any training in the 2018 year.

63. From May 2018 to present, Plaintiff Robinson has continuously been excluded from trainings and meetings that are necessary for proper job performance, at the behest of Defendant Maddox.

64. On or about June 2018, an employee training was held on AR-15 guns. No open call was presented and only the male officers were invited to the training.

**V - Spreading False Information About Female Officers**

65. In 2003, Plaintiff Robinson was the first woman to be promoted to acting Lieutenant and the first and only female Lieutenant. After her promotion, Defendants Maddox and Steward would tell the other men in the department not to let any other women become their bosses and that the women are personal, evil, vindictive, liars, and not to be trusted.

66. Defendants Maddox and Steward would coerce bully the male officers to proffer false statements about the female officers even if the female officers outranked the male officers. Defendants would also promise to protect the male officers and/or promote them if the male officers lied for the Defendants. For example, Plaintiff Robinson overheard Defendants Maddox and Steward telling Officer Williams to tell Chief Watson that

Plaintiff Robinson was the one who caused the gender divide within the department, when in actuality it was Defendants Maddox and Steward creating the gender divide. Chief Watson confronted Plaintiff Robinson about this claim and Plaintiff Robinson tried to explain to him that both Defendants Maddox and Steward lied to attempt to implicate Plaintiff Robinson.

67. The male officers were also forced by Defendants to write untrue statements against the female personnel. For example:

    a. Officer David Harris was forced to change an original statement, wherein he stated a female officer, Security Officer Dionne Merriweather, was not aggressive, to state that she was overly aggressive when responding to a call in the dorm.

    b. Officer Timothy William, and other male offers were forced to make false statements against the female security officers.

68. Defendant Maddox told Chief Walsh, and anyone that would listen, that Plaintiff Sawyer sabotaged the investigator's office so that she would be removed from that office. Various men in the office said it was because Maddox did not want the men taking orders from a woman.

69. In 2010, Defendant Maddox threatened Sergeant Calvin Robins with discipline if he did not falsely accuse Plaintiff Robinson of calling a subordinate officer a "bitch" while on the phone with a dispatcher.

70. In 2013, Defendant Maddox continuously told the male officers that Plaintiff Robinson was the leader of the Girls Club. Simultaneously, Defendant Maddox told the male

officers that Plaintiff Robinson did not get along with other women. As a result, the male officers began to resent and compete against the women in the department.

71. In 2014, Defendants Maddox and Steward started antagonizing the whole department to further the divide, including but not limited to verbal threats of demotion. For example, Defendant Steward would carry a folder around and inform the officers that he was taking notes and keeping files on everyone. Defendants would also threaten the male officers with termination if they did not fight against the women.

    a. For example, defendant Maddox threatened Sgt. Robins with termination if he did not falsely state that Plaintiff Robinson called Sgt. Pamelee Robinson a "bitch" during an encounter in dispatch. Sgt. Robins refused to do so.

    b. Also, during his probationary period, Sgt. Robins was threatened, on a daily basis, that there would be consequences if he listened to Plaintiff Robinson rather than Defendant Steward and Maddox.

    c. Sgt. Robins was also ordered not to inform plaintiff Robinson of incidents that occurred in the department and on his shift, in order to keep plaintiff Robinson ill-informed.

    d. Further, Defendant Steward and Maddox daily told individual officers that they had to always side with them and not "the girls."

72. On or about April 2014, Officer Anthony Goodman filed an unfounded complaint against Plaintiff Sawyer with the EEOC for age and sex discrimination after being told to do so by Defendants Maddox and Steward so that it would put pressure on Chief Walsh to

promote Officer Goodman and not Plaintiff Sawyer. As a result, Plaintiff Sawyer's promotion process was stalled.

73. On or about November 2016, Plaintiff Harris sent an email to Defendant Maddox that Officer Michael Jones requested to go to midnights. Defendant Maddox stated he never received said notification. Thus, Michael Jones never got reassigned. Defendant Maddox attempted to get Jones to write a grievance about her for not being reassigned, but he refused.

74. On or about January 2017, Maddox denied Plaintiff Harris's vacation stating that he never received her request. Plaintiff Harris sent in her vacation with request with her entire shift. Everyone else's vacation was approved.

### Notice of Right to Sue

75. On , Plaintiffs filed charges of gender discrimination with the Equal Opportunity Employment Commission (EEOC), Charge Nos. 440-2018-05816 (Harris), 440-2018-05815 (Kimber), 440-2018-05818 (Burras), 440-2018-05819 (Sawyer), 440-2018-05817 (Robinson) and 440-2018-08042 (Hannah). All allegations contained in these charges are hereby incorporated in this Complaint by reference. Plaintiffs thereafter requested and received Notice of Right to Sue by the EEOC dated October 26, 2018. This lawsuit has been commenced within 90 days of receipt of the Notice of Right to Sue.

### Causes of Action

**Count I-**
**Gender Discrimination in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 USC § 2000e. et seq**
**(Against all Defendants)**

76. Plaintiffs incorporate herein all previous paragraphs of this complaint.

77. Title VII, 42 U.S.C. §2000e-2(a) provides "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

78. Plaintiffs have been the victims of unlawful discriminatory conduct in the workplace. Plaintiffs were unlawfully subject to disparate treatment and suffered adverse employment actions by defendants on the basis of sex. These employment violations were unlawful in violation of Title VII, 42 U.S.C. §2000e-2(a).

79. Plaintiffs have been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as a direct and proximate result of respondent's violations of their civil rights alleged herein. Plaintiffs are reasonably certain to continue to suffer these damages in the future. Plaintiffs are entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. §1981(a), including actual damages, compensatory damages, punitive damages, and attorneys' fees.

WHEREFORE, Plaintiff seek compensation as laid out below.

**Count II-**
**Unlawful Retaliation under Title VII of the Civil Rights Act of 1964, 42 USC 2000e-3(a)**
**(Against all Defendants)**

80. Plaintiffs incorporate herein all previous paragraphs of this complaint.

81. 42 U.S.C. 42 2000e-3(a) provides "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

82. Defendants committed unlawful employment practices when they retaliated against Plaintiffs for their efforts to oppose practices reasonably believed to be prohibited by Title VII, in violation of 42 USC 2000e-3(a).

83. Plaintiffs have been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as a direct and proximate result of respondent's violations of their civil rights alleged herein. Plaintiffs are reasonably certain to continue to suffer these damages in the future. Plaintiffs are entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. §1981(a), including actual damages, compensatory damages, punitive damages, and attorneys' fees.

WHEREFORE, Plaintiffs seek the following relief as to Count II of the Complaint:

A.  All wages and benefits Plaintiffs would have received received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

B.  Compensatory damages in an amount to be determined at trial;

C.  A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D.  A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000 *et seq.*;

E.  The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F.  Punitive damages as allowed by law against Defendants;

G.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

H.  Such other relief as the Court may deem just or equitable.

**Count III -
Conspiracy
(Against All Individual Defendants)**

84. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

85. As described more fully above, the individual Defendants reached an agreement amongst themselves to discriminate against Plaintiffs based upon their gender, and to thereby deprive Plaintiffs of their Constitutional rights, all as described more fully throughout this Complaint.

86. In this manner, Defendants, acting in concert with each other, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

87. In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity, including but not limited to....

88. As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs' rights were violated, and they suffered damages, severe emotional distress and anguish, as is more fully alleged above.

89. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff and others.

90. As a proximate result of the above detailed actions of Defendants, Plaintiffs were injured monetarily and emotionally, including mental suffering, anguish, humiliation, and fear.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands judgment against the Defendants for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

## Count IV -

### Section 1983 - Equal Protection Deprivation Based on Gender

### (Against all Defendants)

91. Plaintiffs reallege and incorporates by reference all previous paragraphs.

92. Defendants subjected Plaintiffs to harassment and discrimination in the terms and conditions of their employment based on their gender by including but not limited to the following: demoting and/or failing to promote Plaintiffs; commending male officers over Plaintiffs; Disciplining female officers over of male officers; changing Plaintiffs'

schedules without notice; demanding male officers to proffer false statements against Plaintiffs; and humiliating Plaintiffs through defacing pictures of Plaintiffs and sending damages emails to Plaintiffs' superiors.

93. Defendants' conduct against Plaintiffs constitutes unlawful discrimination and harassment based on gender and is part of a continuing pattern and practice of discrimination against females based on their gender.

94. The conduct alleged herein constitutes a pattern, custom, and practice of discrimination against women based on their gender.

95. All of Defendants' employment practices as alleged herein are undertaken with discriminatory intent.

96. This conduct as alleged herein constitutes official policies or customs of the Chicago State University Security Department, which violate the Fourteenth Amendment of the United States Constitution as secured by 42 U.S.C. § 1983.

97. Defendants Maddox and Steward, along with Chicago State University, are responsible for the acts of Security Department supervisors and command staff, who were acting within the scope of their employment and pursuant to a policy, custom, and/or pattern of gender discrimination and in violation of individual rights of equal protection under the Fourteenth Amendment to the Constitution of the United States.

98. Defendants Maddox and Steward either participated in the discriminatory treatment, knew or should have known of the discriminatory conduct, failed to take any effective remedial action to remedy and/or prevent the discriminatory treatment, and turned a blind eye to the discriminatory treatment and harassment against Plaintiffs and other women.

99. Defendant have acted under color of state law at all material times hereto.

100.    Defendants engaged in a continuing violation under 42 U.S.C. § 1983.

101.    The actions of Defendants have caused Plaintiffs great mental anguish, humiliation,

degradation, physical and emotional pain and suffering, inconvenience, lost wages and

benefits, future pecuniary losses, and other consequential damages.

102.    Defendants intentionally discriminated against Plaintiffs with malice or reckless

indifference to Plaintiffs' civil rights, thereby entitling Plaintiffs to punitive damages

against the individual Defendants.

103.    Plaintiff requests that the Court order systemic injunctive relief to address the

unlawful conduct complained of herein.

**WHEREFORE,** Plaintiffs seek the following relief as to Count IV of the Complaint:

A.  All wages and benefits Plaintiffs would have received but for the discrimination,

including but not limited to back pay, front pay, prejudgment interest, and restoration of

job assignments;

B.  Compensatory damages in an amount to be determined at trial to compensate Plaintiff for

the humiliation, anguish, and emotional distress caused by Defendants' conduct;

C.  A permanent injunction enjoining Defendants from engaging in the discriminatory

practices complained of herein;

D.  A permanent injunction requiring that Defendants adopt employment practices and

policies in accord and conformity with the requirements of 42 U.S.C. § 1983, and further

requiring that Defendants adopt and initiate effective remedial actions to ensure requal

treatment based on gender;

E. A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1983;

F. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G. Punitive damages as allowed by law as against all individual Defendants;

H. An award of reasonable attorneys' fees, costs, and litigation expenses; and

I. Such other relief as the Court may deem just or equitable.

## Count V -

## Intentional Infliction of Emotional Distress

### (Against All Defendants)

104. Plaintiffs reallege and incorporates by reference all previous paragraphs.

105. Defendants' actions in discrimination against Plaintiffs based on gender, under the color of law, as set forth above, were extreme and outrageous.

106. Defendants intended to maliciously and willfully cause, and were in reckless disregard to the probability that their conduct would cause severe emotional distress to Plaintiffs.

107. Said actions and conduct did directly and proximately cause Plaintiffs to suffer severe emotional distress that still impact them to this day.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages and, because these Defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## Conclusion

WHEREFORE, as a result of Defendants intentionally discriminated against Plaintiffs with malice or reckless indifference to Plaintiffs' civil rights, Plaintiffs Sharon Robinson, Director Winona Hannah, Sergeant Marcella Sawyer, Telecommunications Carla Kimber, Sergeant Veronica Harris, and Officer Lawanda Burras suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages. Therefore, Plaintiffs request punitive and compensatory damages in an amount deemed at trial to be just, fair, and appropriate.

**Jury Trial Demanded**

DATED: January 15, 2019

Respectfully Submitted,
s/ Kellie Walters
The Walters Law Firm
350 N. Orleans St., Ste. 9000N
Chicago, IL 60654
(312) 428-5890
kwalters@walterslawoffice.net