**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LIEUTENANT SHARON ROBINSON, | ) | |
| DIRECTOR WINONA HANNAH, | ) | |
| SERGEANT MARCELLA SAWYER, | ) | |
| TELECOMMUNICATIONS | ) | |
| CARLA KIMBER, SERGEANT VERONICA | ) | |
| HARRIS and OFFICER LAWANDA | ) | |
| BURRAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 19-cv-000395 |
| **-v-** | ) | |
| | ) | Judge Feinerman |
| CHICAGO STATE UNIVERSITY, CAPTAIN | ) | |
| JAMES MADDOX, and LIEUTENANT | ) | |
| CHARLES STEWARD, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>FIRST AMENDED COMPLAINT</u>**

NOW COMES Plaintiffs by and through their attorneys, The Walters Law Firm, and hereby

submit this Complaint against Defendants, Chicago State University, Captain James Maddox and

Lieutenant Charles Steward, seeking monetary and injunctive relief. In support thereof, Plaintiffs

states and alleges the following:

**<u>Introduction</u>**

1.  This is an action for gender discrimination pursuant to 42 U.S.C. § 2000e et seq. (Title

    VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1981.

**<u>Jurisdiction</u>**

2.  Jurisdiction of this matter arises under Title VII of the Civil Rights Act of 1964 at 42

    U.S.C. 2000e.

## Parties

3.  Plaintiffs were at all relevant times female African-American officers employed by the Chicago State University and worked in Chicago, Illinois.

4.  Defendant Chicago State University is a state university in Chicago, Illinois that receives both state and federal funding.

5.  Individual Defendants were at all relevant times employees of Chicago State University and worked in Chicago, Illinois.

## Factual Allegations

### Excellent Job Performance of the Plaintiffs

6.  Plaintiff Robinson has received outstanding or excellent performance evaluations since she began her employment as a police officer at Chicago State University in 1993.  In 2003, she was promoted to the rank of Sergeant.  In 2008, she was promoted to the rank of Lieutenant and became the first black female to ever make it to the rank of Lieutenant in the police department and within the state.  Robinson served as the Clery Compliance Officer, Clery Training Officer, for the entire campus and was the liaison to CPD (emergency management), Traffic Coordinator, Pace Coordinator, and acted as the Chief of Police at various times from 2000-2007. Throughout her career, she has received Command School Training and was being prepped to become the Deputy Chief. She has further received many commendations and certificates.

7.  Plaintiff Hannah has received outstanding performance evaluations since the time she began her employment. Also, in 2017, she received a raise in her income and, in 2019, the University expanded her department and responsibility.

8. Plaintiff Kimber has received outstanding or excellent performance evaluations since she began her employment in 1997. In 2012, she was promoted to the position of dispatcher with the Police Department. In 2013, she was promoted again to the LEADS Coordinator. She is currently the LEADS Coordinator and the Training Operator for the Police Department. Throughout her career, she has received many commendations and certificates.

9. Lawanda Burras has received outstanding or excellent performance evaluations since she began her employment in 2001. In 2005, she joined the Police Department as a Security Officer; in 2008, she was promoted to the position of Police Officer; and In 2016, she received her detective certification. She is currently the Juvenile Officer for the Police Department. Throughout her career, she has received many commendations and certificates.

10. Marcella Sawyer has received outstanding or excellent performance evaluations since she started her employment at Chicago State University as an Extra Help Police Clerk in 1996. She then advanced to the position of Security Officer and became a fully certified dispatcher. In 2007, she was promoted to the position of Police Officer. In 2011, she became an investigator, then later was promoted to one of the first Detectives. In 2014, she became a Sergeant and then Sergeant Detective. Sawyer currently serves as the Union President. Throughout her career, she has received commendations and certificates.

11. Veronica Harris has received outstanding or excellent performance evaluations since she started her employment at Chicago State University in 1992 as a Police officer. In 2000,

she was promoted to the rank of Corporal, then, in 2002, she advanced to the rank of Sergeant. In addition to her role within the Police Department as a sergeant, Harris was the traffic coordinator, training coordinator (FTO), Pace coordinator, and ran the entire Internship Program. Up until retirement, in May 2019, she was the Union President. Throughout her career, she has received many commendations and certificates.

## Disparate Treatment of Female Officers

12. From 2009 to the date of filing, Defendant Captain James Maddox was the supervisor of all Plaintiffs. Since he became their supervisor, Plaintiffs have experienced ongoing harassment from coworkers and supervisors based on their gender. The ongoing pattern of discrimination and harassment have been regular and routine and often occurs several times a week.

13. In 2009, all of the administrative work, such as timekeeping and scheduling, was given only to the female officers. Defendants have never limited the male officers to only the administrative work within the Department.

14. Plaintiffs are regularly referred to as being part of a "Girl's Club" by the male staff, particularly Defendant Maddox. Furthermore, Defendants disparage the male employees who get along with the female officers as being part of the "Girl's Club."

15. After defendants started negatively referring to Plaintiffs' as the "Girls Club," they stated they did not want any more females in leadership positions, nor did they want the department to hire more women.

16. Additionally, Defendants Maddox and Steward started telling the male officers that the women were doing too much and outperforming the men. They further told the male officers that the women would soon be taking over positions of power.

17. On or about June 2011, the Department started hiring new personnel. The Department hired several men and only one female. The Defendants quickly informed the newly hired male officers that the women had created a "Girls Club."

18. The Defendants would reward the male officers for every good arrest. But if a female did the same, she would get no commendation.

19. Defendants have continuously excused the male officers' conduct, while the female officers received reprimands for the slightest incident. For example, a male officer was charged with Driving Under the Influence and received no discipline.

20. The Defendants have subjected the female officers to greater scrutiny of their job performance than their male counterparts.

21. Since Defendant Maddox began supervising Plaintiffs, the female officers have consistently been passed over for promotions.

22. Defendant Maddox has further allowed overtime for only the male officers but not for the female officers.

23. Defendants have demoted and altered the timecards of the Plaintiffs without knowledge or explanation. Whereas, male counterparts have received promotions or shift changes upon requests, and have never had their timecards changed without their knowledge or input.

24. Defendant Steward has further degraded and insulted all the women in the Department by calling them "whores" and "bitches." Defendant Maddox has condoned said behavior by allowing it to continue without incident.

25. The male officers were also forced by Defendants to write untrue statements against the female personnel.

26. Defendant Maddox and Steward used the fictitious "Girls Club" in order to create a divide between the male and female officers

27. In 2014, Defendants Maddox and Steward started antagonizing the whole department to further the divide, including but not limited to verbal threats of demotion if the male officers if they followed orders from their female superiors.

**Plaintiff Robinson**

28. In 2003, Plaintiff Robinson was the first woman to be promoted to acting Lieutenant and the first and only female African-American Lieutenant in the department. Defendants Maddox and Steward would tell the other men in the department not to let any other women become their bosses.

29. Additionally, Defendant Maddox allowed a male subordinate to take credit for Plaintiff Robinson's work (The Annual Security Report) while she was the Clery Compliance Officer.

30. In 2010, Defendant Maddox threatened Sergeant Calvin Robbins with discipline if he did not falsely accuse Plaintiff Robinson of calling a subordinate officer a "bitch" while on the phone with a dispatcher.

31. Also, Defendant Maddox told Plaintiff Robinson that she had to provide a progress report every day.  No other officer has been expected to give a progress report.

32. In 2011, Plaintiff Robinson was inexplicably forced to change her schedule from 9am-5pm to 2pm-10pm while a male counterpart was able to stay on his shift. When Plaintiff Robinson questioned the change, Defendants ignored her query.

33. Plaintiff Robinson remained on the 2pm to 10pm shift for eight years but was still required to perform all the administrative duties, whereas Defendant Steward, when briefly put on the late shift and is the same rank as Plaintiff robinson, was not expected to do any administrative work.

34. In 2015, Defendant Maddox fought with the administration to remove Plaintiff Robinson as a Lieutenant, falsely stating that he did not need that position. Defendant Maddox informed the administration that he was okay with any decision to demote Plaintiff Robinson so long as himself and Defendant Steward remained the status quo. As a result, Plaintiff Robinson was demoted from Lieutenant to Sergeant with no reason given and lost approximately ten percent of her salary, over $10,000.00.

35. On March 2017, Plaintiff Robinson was the highest-ranking Lieutenant in the department. Regardless, Defendant Maddox encouraged the male officers to challenge Plaintiff Robinson's seniority. Specifically, on or about February 2017, Defendant Maddox deliberately sent an erroneous seniority roster to the Union (Metropolitan Alliance of Police Chapter #297) demanding the removal of Plaintiff Robinson and Plaintiff Harris from their rightful line of seniority, which had been acknowledged for over 14 years.

36. On or around May 2017, Plaintiff Robinson and Sergeant Mack resolved issues involving the scheduling of training troops via email. After addressing the problems together, Defendant Maddox sent Plaintiff Robinson a scathing and unnecessary email degrading her for questioning the male sergeant and accusing Plaintiff Robinson of creating a hostile work environment.

37. In 2013, Defendant Maddox continuously told the male officers that Plaintiff Robinson was the leader of the "Girls Club."

38. Starting around March 2014, Defendants tried to pit Plaintiff Robinson and Plaintiff Hannah against one another because Plaintiff Robinson was Plaintiff Hannah's immediate supervisor. For example, Defendant Steward would tell Plaintiff Hannah not to trust Plaintiff Robinson and that Plaintiff Robinson was out of control. At one point, the Defendants even told Plaintiff Hannah that Plaintiff Robinson had called Plaintiff Hannah a "bitch." Defendant Maddox encouraged and condoned this behavior.

39. Plaintiff Robinson, the only female lieutenant, was left out of all the meetings unless it required her typing up paperwork.

40. Additionally, the individual Defendants consistently referred to Plaintiff Robinson as a "glorified secretary."

41. Defendant Maddox also ordered the male sergeants (Norey & Robins) not to inform Plaintiff Robinson of the incidents that had taken place on the campus or their shift because she was a "glorified secretary." Norey followed the order and informed his troops not to inform Plaintiff Robinson of incidents. Sergeant Pamelee Robinson was the only female who followed this order.

42. On or about April 5, 2018, Defendant Maddox had Plaintiff Robinson formally interrogated about an incident with Sergeant Norey, where he pulled his duty weapon on Keith Taylor (one of his subordinates) while conducting an unauthorized knife training course. Although Plaintiff Robinson was not involved in the complaints, nor the incident, Defendant Maddox falsely informed University Counsel that Plaintiff Robinson had police officers John Batson, Keith Taylor, and Wendell Mack make up a story to force Sergeant Norey to retire.

43. Defendants Maddox and Steward would coerce the male officers into making false statements about the female officers. Defendants would further promise to protect the male officers and promote them if they lied for the Defendants. For example, Defendants Maddox and Steward told Officer Williams to falsely report that Plaintiff Robinson was the one who caused the gender divide within the department.

**Plaintiff Hannah**

44. On or about February 16, 2018, Plaintiff Hannah was suspended for two weeks without pay following a verbal altercation that occurred over email. In a more extreme incident, two male officers engaged in a physical fight while armed. Defendants took no disciplinary action against either of them.

45. On or about April 2018, Plaintiff Hannah was placed under investigation and suspended for reportedly failing to purchase a parking permit even though she had purchased the permits and provided the paperwork to prove payment. Plaintiff Hannah was allowed to return to work on May 29, 2018, but as of the date of this filing is still under investigation. Around the same time, two male officers were also accused of not

purchasing parking permits. Defendants did not reprimand or put the male officers under investigation. Instead, parking passes were simply bought for them, and no issue was made.

46. On or about April 2018, Plaintiffs Harris and Robinson were found to have hanging parking placards, which they paid for, instead of the standard decals that the University had switched to in 2016. They were placed under investigation by Captain Maddox for failing to pay for parking, even though records showed they paid. Through the course of the investigation, Defendants accused Plaintiff Hannah of giving Harris and Robinson the placards even though she did not have access to the phased out placards. As a result of this unfounded investigation, Hannah was threatened with termination and forced to hire an attorney to defend her at a hearing.

**Plaintiff Sawyer**

47.  In June 2014, a Sergeant's position became available, and there were only two candidates, Plaintiff Sawyer and Anthony Goodman. During that time, Defendants told all the male officers that if Sawyer became Sergeant, they would have another "Sharon" (Plaintiff Robinson) and they do not need any more females telling the male officers what to do.

48. Plaintiff Sawyer was promoted and given the title and responsibilities of Sergeant Detective in June 2014.  Defendant Maddox was upset with the promotion, and in retaliation, he had the locksmith, Dan Chopp, change the locks on the investigator's office and issued new keys to all the male investigators, but not to Plaintiff Sawyer. Two of the officers were issued keys while they were off-campus at Detective's training and

Detective Jones was told by Defendant Maddox not to tell Plaintiff Sawyer about the lock change. Defendant Maddox never issued Plaintiff a key or told her of the lock change even though he saw her every day.

49. In October 2015, Defendant Maddox called Plaintiff Sawyer to his office and falsely accused her of failing to inspect and report the damage to a vehicle. Plaintiff Sawyer explained that she had been investigating the damage before being called to Defendant Maddox's office.

50. Defendant Maddox then showed Plaintiff Sawyer a stack of old investigative reports and asked why she had not signed them. Plaintiff Sawyer sexplained that Defendant Steward was supposed to sign them after Plaintiff Sawyer reviewed them. Defendant Maddox told Chief Patricia Walsh that Plaintiff Sawyer was responsible for signing the reports and wrongfully accused her of not doing her job.

51. As a result of the previous paragraphs, Defendant Maddox attempted to demote Plaintiff Sawyer. On or about through October 2015, Defendant Maddox was successful in his request and had Plaintiff Sawyer removed from the position of Sergeant Detective without documentation and had her stipend taken away.She was promoted back to Sergeant again in October 15, 2017.

52. On or about July 31, 2017, Plaintiff Sawyer requested a copy of a homicide case file to prepare for court. Defendant Maddox never responded to Plaintiff's Sawyer's email. Seven days later, Defendant Maddox gave an incomplete copy of the case file to Sergeant Wilbert Norey. Plaintiff Sawyer sent a second email on August 12, 2017, to Defendant Maddox reminding him there was a loss of life. Defendant Maddox released the complete

record to Sergeant Norey on August 14, 2017, on Plaintiff Sawyer's day off and one day
before the case went to trial. Defendant Maddox never sent the documentation to Plaintiff
Sawyer.

53. On or about May 21, 2013, Plaintiff Sawyer called an applicant for the investigation unit
who became very rude to her on the phone. After the call, Plaintiff Sawyer informed
Chief Ronnie Watson, Defendant Steward, and Defendant Maddox of the applicant's
attitude. Based on this conversation, Chief Watson rescinded the applicant's offer of
employment. Following this conversation, Defendant Maddox called a meeting with the
Investigators which included Plaintiff Sawyer, Michael Jones, Eugene Heffner &
Anthony Goodman. As soon as Plaintiff Sawyer entered the meeting, she was under
verbal attack by Defendant Maddox stating that she had mishandled the call and alleging
she "sabotaged" the interview because she was jealous of another male officer. Defendant
Maddox became so physically aggressive during the meeting that Investigator Jones had
to stand between Plaintiff Sawyer and Defendant Maddox.

54. On or about April 6, 2014, Plaintiff Sawyer passed the Sergeant's exam. Defendant
Maddox halted her promotion by constant daily attacks, lies, and innuendos. For
example, he falsely accused Plaintiff Sawyer of intentionally throwing a case by not
collecting chemical evidence which required a HazMat team to remove. The chemical
was photographed but not transported for safety reasons. Defendant Maddox made the
unfounded accusation that Plaintiff Sawyer was related to the offender. Plaintiff Sawyer
was questioned and later directed to write a To-From document confirming that she was

not associated with the offender. Because of this incident, Plaintiff Sawyer was not considered for Sergeant.

55. On or about October 2015 while removing her belongings from the Investigator's Office, Plaintiff Sawyer noticed a picture of herself hanging on the wall. In this picture, there are pins stuck in Plaintiff Sawyer's eyes. This picture remained hanging in a shared area, and every time Defendant Maddox walked past it, he would either do nothing or laugh. As of the date of this filing, the picture is still hanging inside the office.

56. Defendant Maddox told Chief Walsh and others that Plaintiff Sawyer sabotaged the investigator's office in order to remove her from that office. Various male officers said it was because Maddox did not want the men taking orders from a woman.

57. On or about April 2014, Defendants told Officer Anthony Goodman to file an unfounded complaint against Plaintiff Sawyer with the EEOC for age and sex discrimination, so that it would put pressure on Chief Walsh to promote Officer Goodman and not Plaintiff Sawyer. This incident stalled Plaintiff Sawyer's promotion process.

58. On or about September 2017, Plaintiff Sawyer was told she needed to "dummy down" because she was "shining too bright" and "overshadowing" the men in the department.

**Plaintiff Kimber**

59. Plaintiff Kimber was written up and required to pay for using a fax machine, while Sergeant Mack had no action taken against him for using the fax machine.

60. On or about May 14, 2018, Defendant Maddox allowed a male officer to take overtime on the third watch while simultaneously revoking the overtime previously offered to

Plaintiff Kimber. To further avoid giving Plaintiff Kimber overtime, Defendants hired an untrained male dispatcher.

61. Beginning in 2017, Plaintiffs Kimber and Burras have not been allowed to occupy the same space in the dispatcher's office, even though they both require access to the computer for performing various tasks. The male officers' association with each other and their presence in the dispatcher's office has never been monitored or regulated.

62. On or about November 2016, Plaintiff Harris submitted Plaintiff Kimber's request for time off during the holidays. Maddox denied the time and falsely told Plaintiff Kimber that he never received the paperwork from Plaintiff Harris.

63. On or about March 2018, Plaintiff Kimber received permission to use her emergency time to deal with a personal emergency. However, Maddox later said that she was not allowed to use emergency time and instead put her leave down as sick time.

64. On or about August 24, 2016, Defendant Maddox took Plaintiff Kimber's and badge during a routine audit to examine her badge further. After the audit's conclusion, Maddox did not return her badge for at least a year. It was not returned to her until she went to his superior, who ordered him to do so.

**Plaintiff Harris**

65. On or about February 2017, Defendant Maddox deliberately sent an erroneous seniority roster to the Union (Metropolitan Alliance of Police Chapter #297) demanding the removal of Plaintiff Robinson and Plaintiff Harris from their rightful line of seniority, which had been acknowledged for over 14 years.

66. On or about November 2016, Plaintiff Harris submitted Plaintiff Kimber's request for time off during the holidays. Maddox denied the time and falsely told Plaintiff Kimber that he never received the paperwork from Plaintiff Harris.

67. On or about March 2018, Plaintiff Harris provided written notification, rather than a verbal notification, after a medical emergency, as was the practice at the time. She received a verbal reprimand, which went in her file, for failing to call. However, around the same time, male officer Sgt. Calvin Robbins committed a similar offense and did not receive a reprimand, but was informed of the change in procedure.

68. Defendant Steward told Plaintiff Harris that Defendant Maddox did not like her because she was not a "yes woman" and asked too many questions. Defendant Maddox was very aggressive towards Plaintiff Harris when confronted.

69. On or about March 27, 2015, Defendant Steward told Plaintiff Harris that the administration implemented new stricter rules that were contrary to the union contract and she was expected to follow the new rules. None of the male officers followed these new rules and were never disciplined

70. Defendant Steward further filed a baseless reprimand against Plaintiff Harris for leaving officers outside instead of bringing everyone inside for the event.

71. On or about May 6, 2015, Plaintiff Harris was the on-duty supervisor. She took the complaint of a woman who stated that a male officer unnecessarily ejected pepper spray into the grill of her vehicle, forcing her to exit the car. Plaintiff Harris then turned the complaint into Defendants Maddox and Steward.  Upon receipt of the complaint,

Defendant Steward did not reprimand the male officer. Instead, he gave Plaintiff Harris a verbal reprimand, and never disciplined the male officer.

72. On or about December 2016, Defendant Maddox changed Plaintiff Harris's timecard without her knowledge. When Plaintiff Harris confronted Defendant Maddox, Defendant Maddox stated that he had every right to change the time card. Defendant Maddox falsely alleged that Plaintiff Harris threatened him and tried to attack him during this exchange. These false allegations resulted in plaintiff Harris receiving a 5-day suspension.

73. On or about November 2016, Plaintiff Harris sent an email to Defendant Maddox that Officer Michael Jones requested to go to midnights. Defendant Maddox stated he never received said notification. Thus, Michael Jones never got reassigned. Defendant Maddox attempted to get Jones to write a grievance about her for not being reassigned, but he refused.

74. On or about January 2017, Maddox denied Plaintiff Harris's vacation stating that he never received her request. Plaintiff Harris sent in her vacation request with her entire shift. Everyone else's vacation was approved.

**Plaintiff Burras**

75. Starting in 2017, Plaintiffs Kimber and Burras have not been allowed to occupy the same space in the dispatcher's office, even though Burras would reasonably need to access that room. The male officers' association with each other and their presence in the dispatcher's office has never been monitored or regulated.

76. Sergeant Wendell Mack struck a pedestrian while on patrol and no action was taken against him. Whereas, Defendants reprimanded Plaintiff Burras after she struck a fixed object while on patrol.

77. Officer Peter Scalone destroyed at least four vehicles, but no action was taken against him. Whereas, Plaintiff Burras was given a written reprimand after one accident.

78. Throughout 2018, there were at least four separate accidents that resulted in damage to state property.  Each one of these accidents involved male officers, and none of the officers were reprimanded, investigated, or suffered any consequences for the accidents or damage caused. Defendants brought on a full investigation and disciplined Plaintiff Burras when she was involved in a similar accident.

79. Defendants have continuously monitored Plaintiff Burras regarding whom she eats with, talks with, and when she is allowed in the station, while Defendants have never questioned her male cohorts on the same topics.

80. In 2014, Defendants ordered Plaintiff Robinson to reprimand Plaintiff Burras, without investigation, upon the false belief that she failed to appear in court. After Plaintiff Robinson investigated the claim, she found that Officer David Harris was the officer who had failed to appear in court. She told the Defendants, but Defendants ordered Plaintiff Robinson to do nothing against the male officer. This incident resulted in a lawsuit.

81. In 2009, Plaintiff Burras was the only female officer on her shift. She was the arresting officer in a robbery case. Instead of rewarding her, Defendant Maddox gave commendations to two male officers.

82. In 2016, Plaintiff Burras was sent to detective training two weeks after training had already begun. Plaintiff Burras was denied to test and graduate while a male counterpart, Peter Scalone, who missed the same amount of time (or more) was allowed to test and graduate the program.

83. In 2017, Plaintiff Burras completed detective training for the second time, but she did not get the option to shadow the detectives at CSU. However, Peter Scalone, a male officer, received the position. Mr. Scalone initially did not want to take the position because it required the hours of 9:00am to 5:00pm. Because the Defendants did not want any females in the Detective Division, Plaintiff Burras was never given the opportunity even after Mr. Scalone initially refused the position. As of the date of this filing, no females are within the Detectives Division even though 85% of the campus is female.

84. In 2014, Defendants ordered Plaintiff Robinson to reprimand Plaintiff Burras without investigation upon the belief that she failed to appear in court for an automobile accident. After Plaintiff Robinson investigated the claim, she found that Officer David Harris was the officer who failed to appear in court. She told the Defendants, but Defendants ordered Plaintiff Robinson to do nothing against the male officer because he had a good reason for failing to appear in court. This incident resulted in a lawsuit in which the University/Central Management Service settled for $30,000.00.

85. On or about October 24, 2018, Defendant Maddox refused to allow Plaintiff Burras the opportunity to use one of the patrol vehicles to attend her scheduled training class, knowing that she did not have a personal car. None of the male officers were ever questioned or denied the use of a patrol vehicle for training.

**Retaliation**

86. Plaintiffs have filed multiple grievances and spoken to the Union, EEOC, and Human Resources on numerous occasions about the discrimination committed by and condoned by Defendant Maddox and Defendant Steward, including but not limited to:

   a. Plaintiff Robinson had to file a grievance against Defendant Maddox for refusing to offer her overtime after providing it to the male officers in the department.

   b. Plaintiffs Harris and Robinson were forced to bring the union in to stop the Defendant from moving forward on removing and altering the seniority on the roster.

   c. Also, Plaintiff Harris also met with Human Resources Director, Rene Mitchell, in February 2016 to discuss the sex discrimination within the Department.

   d. Plaintiff Harris also met with Patrick Cage, General Counsel for the University. He stated that he would sit down with the Chief and work on the changes. However, that meeting never took place.

   e. On or about March 1, 2017, Defendant Maddox received a "Cease and Desist" letter from plaintiffs Robinson and Harris.

   f. On March 8, 2017, an official complaint was filed against Defendant Maddox with the University EEOC Office. No action was taken.

   g. On or about May 2017, a complaint was filed with the University's EEOC Office because Maddox had taken away Plaintiffs' overtime. Again, no action was taken.

h. In March 2018, Plaintiff Harris filed an additional discrimination/harassment complaint with the EEOC Office against Defendant Maddox, requesting that his attempts to intimidate her cease.

i. In May 2018, Plaintiff Hannah complained to Lindsey Hamilton, the Human Resources Director, about Defendants' harassment and attempts to terminate her. Hamilton removed Defendant Maddox from overseeing and supervising the Parking Department and Plaintiff Hannah.

87. Because of Defendant's behavior, on August 22, 2018, the new Chief of Police told Plaintiff Robinson to report directly to him rather than to Defendant Captain Maddox.

88. During and after the various complaints filed against him and Defendant Steward, Defendant Maddox began taking measures designed to retaliate against Plaintiffs.

a. On March 8, 2017, Defendant Maddox retaliated by sending an email to the entire university administrative staff with false accusations that Plaintiffs Robinson and Harris harassed and created a hostile work environment. Plaintiffs Robinson and Harris were called bullies, unprofessional as well as inappropriate.

b. Also, on or about February 21, 2018, Defendant Maddox sent an email containing harsh, embarrassing, belittling, intimidating, and false statements directed at Plaintiff Sawyer. He copied Plaintiffs Robinson and Harris as well as Defendant Steward, Sergeant Pamela Robinson, Sergeant Calvin Robins, and Sergeant Wendell Mack. This email was meant to damage Plaintiff's Sawyer reputation amongst her superiors and coworkers. It was also done to prevent Plaintiff Sawyer from becoming the new Union President.

c. Defendant further began intentionally precluding Plaintiffs from vital training and meetings, including, but not limited to:

    i. Defendant Maddox removed Plaintiff Robinson, the only female lieutenant, from all department training and exercises unless it involved her typing notes, including but not limited to emergency and daily operations. As such, she was not informed of the daily operations of the department.

    ii. Defendant Maddox removed Plaintiff Robinson from the notification list, while the new Chief was put on it within two days of his employment. Because of her removal from the notification list, Plaintiff Robinson was not informed of charges filed or necessary notifications for administration.

    iii. On or about May 9, 2018, Defendants Maddox and Steward went to "Procedure, Justice, and Police" training, but none of the female officers were not allowed to attend.

    iv. On or about June 2018, an employee training was held on AR-15 guns. No open call was presented, and only the male officers were invited to the training.

    v. Defendant Maddox removed Plaintiff Hannah, who is in charge of all parking-related matters, from all parking-related meetings without provocation.

**Notice of Right to Sue**

89. On or about September 10, 2018, Plaintiffs filed charges of gender discrimination with the Equal Opportunity Employment Commission (EEOC), Charge Nos. 440-2018-05816 (Harris), 440-2018-05815 (Kimber), 440-2018-05818 (Burras), 440-2018-05819 (Sawyer), 440-2018-05817 (Robinson) and 440-2018-08042 (Hannah). All allegations contained in these charges are hereby incorporated in this Complaint by reference. Plaintiffs thereafter requested and received Notice of Right to Sue by the EEOC dated October 26, 2018. This lawsuit has been commenced within 90 days of receipt of the Notice of Right to Sue.

**Causes of Action**

**Count I-**
**Gender Discrimination in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 USC § 2000e. et seq**
**(Against all Defendants)**

90. Plaintiffs incorporate herein all previous paragraphs of this complaint.

91. Title VII, 42 U.S.C. §2000e-2(a) provides "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

92. Plaintiffs have been the victims of unlawful discriminatory conduct in the workplace. Plaintiffs were unlawfully subject to disparate treatment and suffered adverse

employment actions by defendants on the basis of sex. These employment violations were unlawful in violation of Title VII, 42 U.S.C. §2000e-2(a).

93. Specifically, all Plaintiffs, individually and as a group, have been subjected to duties, policies, and standards that are different and more stringent than similarly situated male officers.

94. In addition, Plaintiffs, individually and as a group, have been reprimanded for behavior that when performed by similarly situated male employees brought on no discipline and Defendants have given commendations to male employees for the work that Plaintiffs have done.

95. Further, Plaintiffs, individually and as a group, have had their position with the University undermined and sabotaged by Defendants.

96. Plaintiffs have been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as a direct and proximate result of respondent's violations of their civil rights alleged herein. Plaintiffs are reasonably certain to continue to suffer these damages in the future. Plaintiffs are entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. §1981(a), including actual damages, compensatory damages, punitive damages, and attorneys' fees.

WHEREFORE, Plaintiffs seek compensation as laid out below.

A. All wages and benefits Plaintiffs would have received received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D. A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000 *et seq.*;

E. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

F. Punitive damages as allowed by law against Defendants;

G. An award of reasonable attorneys' fees, costs, and litigation expenses; and

H. Such other relief as the Court may deem just or equitable.

**Count II-**
**Unlawful Retaliation under Title VII of the Civil Rights Act of 1964, 42 USC 2000e-3(a)**
**(Against all Defendants)**

97. Plaintiffs incorporate herein all previous paragraphs of this complaint.

98. 42 U.S.C. 42 2000e-3(a) provides "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

99. Defendants committed unlawful employment practices when they retaliated against Plaintiffs for their efforts to oppose practices reasonably believed to be prohibited by Title VII, in violation of 42 USC 2000e-3(a).

100. Specifically, Plaintiffs, individually and as a group, have made complaints to Human Resources, the Union, and EEOC about the sex discrimination they incur on a regular basis.

101. In addition, Plaintiffs have sent Defendant Maddox a "cease and desist" letter.

102. Shortly after these complaints, Defendant began retaliating against Plaintiffs by precluding the female officers from necessary trainings and meetings and sending emails to the entire university administrative staff with false accusations about Plaintiffs.

103. Plaintiffs have been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as a direct and proximate result of respondent's violations of their civil rights alleged herein. Plaintiffs are reasonably certain to continue to suffer these damages in the future. Plaintiffs are entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. §1981(a), including actual damages, compensatory damages, punitive damages, and attorneys' fees.

WHEREFORE, Plaintiffs seek the following relief as to Count II of the Complaint:

I. All wages and benefits Plaintiffs would have received received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;

J. Compensatory damages in an amount to be determined at trial;

K. A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

L. A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000 *et seq.*;

M. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

N. Punitive damages as allowed by law against Defendants;

O. An award of reasonable attorneys' fees, costs, and litigation expenses; and

P. Such other relief as the Court may deem just or equitable.

**Count III -
Conspiracy
(Against Individual Defendants)**

104. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

105. As described more fully above, the individual Defendants reached an agreement amongst themselves to discriminate against Plaintiffs based upon their gender, and to thereby deprive Plaintiffs of their Constitutional rights, all as described more fully throughout this Complaint.

106.   In this manner, Defendants Maddox and Steward, acting in concert with each other, have conspired by concerted action to accomplish an unlawful purpose by unlawful means.

107.   In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity, including but not limited to, encouraging the male officers to refer to the female officers as "The Girls' Club," encouraging male officers to ignore the authority of Plaintiff Robinson and other Plaintiffs, forcing the male officers to make false allegations against the female officers, and allowing the male officers to commit infractions without discipline while simultaneously reprimanding the female officers for similar behavior.

108.   As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs' rights have been violated repeatedly, and they have suffered significant damages, severe emotional distress and anguish, as is more fully alleged above.

109.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff and others.

110.   As a proximate result of the above detailed actions of Defendants, Plaintiffs were injured monetarily and emotionally, including mental suffering, anguish, humiliation, and fear.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands judgment against the Defendants for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**Count IV -**

**Section 1983 - Equal Protection Deprivation Based on Gender**

**(Against Individual Defendants)**

111.    Plaintiffs reallege and incorporates by reference all previous paragraphs.

112.    Defendants subjected all Plaintiffs to harassment and discrimination in the terms and
conditions of their employment based on their gender by including but not limited to the
following: demoting and/or failing to promote Plaintiffs; commending male officers over
Plaintiffs; Disciplining female officers over of male officers; changing Plaintiffs'
schedules without notice; demanding male officers to proffer false statements against
Plaintiffs; and humiliating Plaintiffs through defacing pictures of Plaintiffs and sending
damages emails to Plaintiffs' superiors.

113.    Defendants' conduct against Plaintiffs constitutes unlawful discrimination and
harassment based on gender and is part of a continuing pattern and practice of
discrimination against females based on their gender.

114.    The conduct alleged herein constitutes a pattern, custom, and practice of
discrimination against women based on their gender.

115.    All of Defendants' employment practices as alleged herein are undertaken with
discriminatory intent.

116.    This conduct as alleged herein constitutes official policies or customs of the Chicago
State University Security Department, which violate the Fourteenth Amendment of the
United States Constitution as secured by 42 U.S.C. § 1983.

117.    Defendants Maddox and Steward, along with Chicago State University, are
responsible for the acts of Security Department supervisors and command staff, who

were acting within the scope of their employment and pursuant to a policy, custom, and/or pattern of gender discrimination and in violation of individual rights of equal protection under the Fourteenth Amendment to the Constitution of the United States.

118. Defendants Maddox and Steward either participated in the discriminatory treatment, knew or should have known of the discriminatory conduct, failed to take any effective remedial action to remedy and/or prevent the discriminatory treatment, and turned a blind eye to the discriminatory treatment and harassment against Plaintiffs and other women.

119. Defendant have acted under color of state law at all material times hereto.

120. Defendants engaged in a continuing violation under 42 U.S.C. § 1983.

121. The actions of Defendants have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

122. Defendants intentionally discriminated against Plaintiffs with malice or reckless indifference to Plaintiffs' civil rights, thereby entitling Plaintiffs to punitive damages against the individual Defendants.

123. Plaintiff requests that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

**WHEREFORE,** Plaintiffs seek the following relief as to Count IV of the Complaint:

A. All wages and benefits Plaintiffs would have received but for the discrimination, including but not limited to back pay, front pay, prejudgment interest, and restoration of job assignments;

B. Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants' conduct;

C. A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure requal treatment based on gender;

E. A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1983;

F. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G. Punitive damages as allowed by law as against all individual Defendants;

H. An award of reasonable attorneys' fees, costs, and litigation expenses; and

I. Such other relief as the Court may deem just or equitable.

### Count V -

### Intentional Infliction of Emotional Distress

### (Against All Defendants)

124. Plaintiffs reallege and incorporates by reference all previous paragraphs.

125. Defendants' actions in discrimination against Plaintiffs based on gender, as set forth above, were extreme and outrageous.

126.    Defendants intended to maliciously and willfully cause, and were in reckless disregard to the probability that their conduct would cause severe emotional distress to Plaintiffs.

127.    Said actions and conduct did directly and proximately cause all Plaintiffs to suffer severe emotional distress that still impact them to this day.

WHEREFORE, Plaintiffs demand judgment against the Defendants for compensatory damages and, because these Defendants acted maliciously, wantonly, or oppressively, punitive damages, plus the costs of this action and attorney's fees, and such other and additional relief as this court deems equitable and just.

## Conclusion

WHEREFORE, as a result of Defendants intentionally discriminated against Plaintiffs with malice or reckless indifference to Plaintiffs' civil rights, Plaintiffs Sharon Robinson, Director Winona Hannah, Sergeant Marcella Sawyer, Telecommunications Carla Kimber, Sergeant Veronica Harris, and Officer Lawanda Burras suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.  Therefore, Plaintiffs request punitive and compensatory damages in an amount deemed at trial to be just, fair, and appropriate.

**Jury Trial Demanded**


DATED: August 20, 2019

Respectfully Submitted,

s/ Kellie Walters
The Walters Law Firm
350 N. Orleans St., Ste. 9000N
Chicago, IL 60654
(312) 428-5890
kwalters@walterslawoffice.net

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the foregoing was served upon all opposing counsel electronically, through the ECF of the Northern District of Illinois system on August 20, 2019.

/s Kellie Walters