**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LIEUTENANT SHARON ROBINSON, DIRECTOR WINONA HANNAH, SERGEANT MARCELLA SAWYER, TELECOMMUNICATIONS CARLA KIMBER, SERGEANT VERONICA HARRIS and OFFICER LAWANDA BURRAS, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 19-cv-00395<br><br>Honorable Martha G. Pacold |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | |
| CHICAGO STATE UNIVERSITY, CAPTAIN JAMES MADDOX, individually and in his official capacity, LIEUTENANT CHARLES STEWARD, individually and in his official capacity, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      Counts I and IV must be dismissed under Rule 12(b)(6) for failure to state a claim
        upon which relief can be granted. ...................................................................................... 2

II.     Count II should be dismissed under Rule 12(b)(6) for failure to state a claim upon
        which relief can be granted. ............................................................................................. 10

III.    Count III should be dismissed under Rule 12(b)(6) for failure to state a claim upon
        which relief can be granted. ............................................................................................. 12

        a.      Count III is barred by the intra-corporate conspiracy doctrine. ........................... 12

        b.      Count III fails to allege the elements of conspiracy. ............................................ 16

IV.     Counts III and IV should be dismissed with prejudice under Rule 12(b)(1) pursuant
        to the doctrine of sovereign immunity .............................................................................. 17

V.      Count V should be dismissed under Rules 12(b)(1) and/or 12(b)(6) ............................... 18

        a.      Count V should be dismissed with prejudice under Rule 12(b)(1) pursuant
                to statutory immunity ............................................................................................. 18

        b.      Count V also should be dismissed with prejudice under Rule 12(b)(1)
                pursuant to state-law preemption ........................................................................... 20

        c.      Count V also should be dismissed under Rule 12(b)(6) for failure to state a
                claim ........................................................................................................................ 21

VI.     Conclusion ......................................................................................................................... 23

        CERTIFICATE OF SERVICE ............................................................................................ ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) ................................................... 7

*Aguilar v. St. Anthony Hosp.*,
  207 F. Supp. 2d 747 (N.D. Ill. 2001) ...................................... 10

*Allen v. City of Chi.*,
  828 F. Supp. 543 (N.D. Ill. 1993) ........................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................... 16

*Bannon v. Univ. of Chi.*,
  503 F.3d 623 (7th Cir. 2007) .................................... 7, 21, 22

*Beaman v. Freesmeyer*,
  776 F.3d 500 (7th Cir. 2015) ................................................. 16

*Bell Atlantic Corporation v. Twombly*,
  550 U.S. 544 (2007)............................................................... 16

*Benitez v. KFC Nat'l Mgmt. Co.*,
  305 Ill.App.3d 1027, 714 N.E.2d 1002 (Ill. App. 1999)......... 20

*Brewton v. City of Harvey*,
  285 F. Supp. 2d 1121 (N.D. Ill. 2003) .................................... 11

*Briggs v. N. Shore Sanitary Dist.*,
  914 F. Supp. 245 (N.D. Ill. 1996) ........................................... 23

*Brown v. Ill. Dep't of Nat. Resources*,
  499 F.3d 675 (7th Cir. 2007) .................................................... 7

*Council 31 of Am. Fed'n of State, Cty. and Mun. Emps., AFL-CIO v. Quinn*,
  680 F.3d 875 (7th Cir. 2012) .................................................. 18

*Crosson v. Caremark, Inc.*,
  212 F. Supp. 2d 875 (N.D. Ill. 2002) ........................................ 9

*Cui v. Elmhurst Police Dep't*,
  No. 14 C 8330, 2015 WL 5462138 (N.D. Ill. Sept. 17, 2015)........... 16, 17

*Currie v. Lao*,
   148 Ill. 2d 151, 592 N.E.2d 977 (1992) ........................................................ 18, 19, 20

*Doe v. Board of Educ. of Hononegah Cmty. High Sch. Dist. No. 207*,
   833 F. Supp. 1366 (N.D. Ill. 1993) ........................................................ 13, 14

*EEOC v. Int'l Profit Assocs.*,
   647 F. Supp. 2d 951 (N.D. Ill. 2009) ........................................................ 6

*Elias v. Stewart Title of Ill.*,
   No. 9 C 6773, 2011 WL 1157534 (N.D. Ill. Mar. 29, 2011) ........................................................ 12

*Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
   No. 02 C 9303, 2003 WL 22176077 (N.D. Ill. Sept. 18, 2003) ........................................................ 14, 15

*G & S Holdings LLC v. Cont'l Cas. Co.*,
   697 F.3d 534 (7th Cir. 2012) ........................................................ 16, 17, 21

*Galloway v. Gen. Motors Serv. Parts Operations*,
   78 F.3d 1164 (7th Cir. 1996), *abrogated on other grounds by*
   *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ........................................................ 6

*Harriston v. Chi. Tribune Co.*,
   992 F.2d 697 (7th Cir. 1993) ........................................................ 22

*Hartman v. Bd. of Trs. of Cmty. Coll. Dist. 508*,
   4 F.3d 465 (7th Cir. 1993) ........................................................ 13

*Herrnreiter v. Chi. Hous. Auth.*,
   315 F.3d 742 (7th Cir. 2002) ........................................................ 3

*Hicks v. Sheahan*,
   No. 03 C 0327, 2004 WL 3119016 (N.D. Ill. Dec. 20, 2004) ........................................................ 4

*Hizer v. S. Bend Tribune*,
   31 F. Supp. 3d 986 (N.D. Ind. 2014) ........................................................ 5, 6

*Johnson-Carter v. B.D.O. Seidman, LLP*,
   169 F. Supp. 2d 924 (N.D. Ill. 2001) ........................................................ 4, 5, 9

*Kissiova v. Bayview Loan Servicing, LLC*,
   No. 15 C 9812, 2017 WL 914779 (N.D. Ill. Mar. 8, 2017) ........................................................ 5

*Lenea v. Lane*,
   882 F.2d 1171 (7th Cir. 1989) ........................................................ 18

*Lewis v. Wilkie*,
   909 F.3d 858 (7th Cir. 2018) ........................................................ 9, 10

iii

*Loubser v. Thacker*,
    440 F.3d 439 (7th Cir. 2006) ....................................................................................... 16

*Luder v. Endicott*,
    253 F.3d 1020 (7th Cir. 2001) ............................................................................... 17, 18

*Maksimovic v. Tsogalis*,
    177 Ill.2d 511, 687 N.E.2d 21 (1997) ...................................................................... 20

*McDorman v. Smith*,
    No. 05 C 0448, 2005 WL 1869683 (N.D. Ill. Aug. 2, 2005) .................................... 14

*Naeem v. McKesson Drug Co.*,
    444 F.3d 593 (2006) ............................................................................................ 20, 21

*O'Neal v. City of Chicago*,
    317 F. Supp. 2d 823 (N.D. Ill. 2004) ......................................................................... 9

*Pavilon v. Kaferly*,
    204 Ill.App.3d 235, 561 N.E.2d 1245 (1990) ........................................................... 20

*Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*,
    184 F.3d 623 (7th Cir. 1999) ................................................................................... 13

*Quantock v. Shared Mktg. Servs., Inc.*,
    312 F.3d 899 (7th Cir. 2002) ................................................................................... 21

*Quern v. Jordan*,
    440 U.S. 332 (1979) ................................................................................................ 18

*Richman v. Sheahan*,
    270 F.3d 430 (7th Cir. 2001) ................................................................................... 19

*Ritzheimer v. Ins. Counselors, Inc.*,
    173 Ill.App.3d 953, 527 N.E.2d 1281 (1988) ........................................................... 20

*Salto v. Mercado*,
    No. 96 C 7168, 1997 WL 222874 (N.D. Ill. Apr. 24, 1997) .................................... 14

*Scruggs v. Garst Seed Co.*,
    587 F.3d 832 (7th Cir. 2009) ..................................................................................... 6

*Stone v. Bd. of Trs. of N. Ill. Univ.*,
    38 F.Supp.3d 935 (N.D. Ill. 2014) .......................................................... 7, 12, 13, 15

*Sutton v. Overcase*,
    251 Ill.App.3d 737, 623 N.E.2d 820 (1993) ............................................................ 20

iv

*Tamayo v. Blagojevich*,
526 F.3d 1074 (7th Cir. 2008) ................................................................. 3

*Travis v. Gary Community Mental Health Center*,
921 F.2d 108 (7th Cir. 1990) ................................................................. 15

*Unruh v. Humana Ins. Co.*,
No. 17 C 1782, 2019 WL 4648934 (N.D. Ill. Sept. 24, 2019)................ 21

*Van Stan v. Fancy Clours & Co.*,
125 F.3d 563 (7th Cir. 1997) ................................................................. 22

*Williams v. Bristol–Myers Squibb Co.*,
85 F.3d 270 (7th Cir.1996) ................................................................. 10

*Williams v. Phillips 66 Co.*,
72 F. Supp. 3d 938 (S.D. Ill. 2014)........................................................ 23

*Wright v. Ill. Dep't of Children & Family Servs.*,
40 F.3d 1492 (7th Cir. 1994) ........................................................ 13, 15

## **Statutory Authorities**

42 U.S.C. § 1983 ................................................................. 3, 8, 9, 14, 15

42 U.S.C. § 2000e2(a)(1) ................................................................. 5

735 ILCS 5/13-202 ................................................................. 21

745 ILCS 5/1 ................................................................. 18

775 ILCS 5/2-102 ................................................................. 21

775 ILCS 5/8-111(C) ................................................................. 20

## **Rules and Regulations**

Fed. R. Civ. P. 12 ................................................ 1, 2, 9, 10, 12, 17, 18, 20, 21, 23

Fed. R. Civ. P. 25 ................................................................. 18

Plaintiffs' lengthy "Response in Opposition to Defendants' Second Motion to Dismiss" ("Response") (Dkt. # 57-1) fails to offer any persuasive argument as to why Plaintiffs' claims can survive Defendants' Motion to Dismiss (with supporting memorandum, collectively "Motion") (Dkt. # 48, 49). As detailed in Defendants' Motion and this reply brief, virtually every claim in Plaintiffs' Amended Complaint warrants dismissal.[1]

*First*, Counts I and IV (Plaintiffs' gender discrimination claims) should be dismissed in their entirety as to Plaintiffs Kimber, Harris, Burras, Robinson, and Sawyer against Defendant Chicago State University ("CSU") and as to all Plaintiffs against Defendants Maddox and Steward (the "Individual Defendants"). These claims should be dismissed for their failure to state a claim for gender discrimination under either Title VII or the Equal Protection Clause, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Additionally, Count IV also should be dismissed pursuant to Federal Rule 12(b)(1) for lack of subject-matter jurisdiction, as discussed in Section IV, *infra*.[2]

*Second*, Count II (Plaintiffs' Title VII retaliation claim) should be dismissed in its entirety against all Defendants for failure to state a claim under Rule 12(b)(6).

*Third*, Count III (Plaintiffs' civil conspiracy claim against Individual Defendants) should be dismissed in its entirety for failure to state a conspiracy claim, failure to state an underlying constitutional claim, and as barred by the intra-corporate conspiracy doctrine pursuant to Rule 12(b)(6).

---

[1] Plaintiffs' Response is cited herein as "Resp." Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' First Amended Complaint is cited as "Mem." The First Amended Complaint is cited as "FAC".

[2] In fact, the only gender discrimination claim that potentially can survive Defendants' motion is Plaintiff Hannah's claim of gender discrimination against CSU under Title VII (Count I). All other claims in Plaintiffs' Amended Complaint must be dismissed for the reasons explained herein.

*Fourth,* claims for monetary damages under Counts III and IV, which are brought pursuant to the Equal Protection Clause and only brought against the Individual Defendants, should be dismissed on the independent ground that such damages are barred by the Eleventh Amendment under Rule 12(b)(1).

*Fifth*, Count V Plaintiffs' Intentional Infliction of Emotional Distress claim) should be dismissed with prejudice against all Defendants pursuant to Rule 12(b)(1) under both the Illinois State Lawsuit Immunity Act and the Illinois Human Rights Act.[3] In addition, Count V should be dismissed against all Defendants for failure to state a claim for intentional infliction of emotional distress under Rule 12(b)(6).[4]

## I. Counts I and IV must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

As an initial matter, Plaintiffs now expressly concede that both Counts I and II must be dismissed with prejudice against the Individual Defendants (Resp. at 14) because, as Judge Feinerman noted, "only the employer can be sued under Title VII." Mem., Ex. A at 6.

The remainder of Counts I and IV allege gender discrimination against CSU under Title VII (Count I) and against the Individual Defendants under the Equal Protection Clause (Count IV). These claims must be dismissed as well. Count I and Count IV are governed by the same pleading standard: a plaintiff alleging sex discrimination under Title VII or the Equal Protection Clause must plead that her employer subjected her to an adverse employment action on the basis of her sex. Mem. at 8; Resp. at 18. Contrary to Plaintiffs' assertion, it is not sufficient to plead generally

---

[3] While Plaintiffs dispute whether Judge Feinerman intended any of the Counts to be dismissed with prejudice under Rule 12(b)(1), that dispute is beside the point because this Court does not have subject-matter jurisdiction over those Counts. As this Court lacks jurisdiction over Counts III, IV, and V due to constitutional immunity, statutory immunity, and state law preemption, this Court must dismiss these Counts now with prejudice.

[4] Defendants acknowledge that the Rule 12(b)(5) argument in their Motion related to service of Defendant Steward is now moot.

that they were treated less favorably than male employees. In fact, Plaintiffs' comparison of their claims to claims in *Tamayo* (Resp. at 18) only illustrates the insufficiency of their claims.

The court in *Tamayo* expressly noted that to survive a motion to dismiss the plaintiff alleged **<u>specific</u>** adverse employment actions in her complaint and these allegations were both actionable and timely. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1085-86 (7th Cir. 2008) (holding that where plaintiff "listed specific adverse employment actions," and pled she was treated "less favorably than . . . similarly-situated male employees on account of her gender" (e.g. plaintiff specifically alleged "individual defendants 'intentionally engaged in a course of conduct to prevent [her] from being paid the $160,000 per year that [she] was told that she would receive'"), plaintiff's Title VII and § 1983 claims survived a motion to dismiss). In this case, Plaintiffs fail to list virtually any specific adverse employment actions that are both actionable and timely. For purposes of an actionable claim, the Seventh Circuit recognizes actions related to (1) termination or reduction in financial terms, (2) significant reduction in career prospects, and (3) significantly negative changes in working conditions that objectively create a hardship. *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). With the only exception being Plaintiff Hannah's Title VII gender discrimination claim against CSU, Plaintiffs have failed to plead any actionable and timely adverse actions taken against them by CSU or the Individual Defendants. In seemingly an attempt to circumvent the requirement of pleading an adverse action, Plaintiffs now say that they were subject to a hostile work environment. This argument fails not only because it was not pled, but also because Plaintiffs' allegations are insufficient to find that a hostile work environment existed as discussed in more detail below. As such, the remainder of Counts I and IV should be dismissed for the following reasons:

*Kimber, Harris and Burras have not pled adverse actions*:  Plaintiffs cherry-pick a few allegations from a single case – *Hicks v. Sheahan*, No. 03 C 0327, 2004 WL 3119016 (N.D. Ill. Dec. 20, 2004) – in an attempt to argue that the insufficient allegations in their Amended Complaint are adequate.  In doing so, Plaintiffs ignore both the full scope of the *Hicks* decision and the substantial case law cited by Defendants in support of the argument that neither Kimber, Harris, nor Burras plead that she was subject to an actionable adverse employment action. *Compare* Resp. at 20 *with* Mem. at 9-10.[5]  Plaintiffs may disagree that actions such as a suspension with pay, failure to receive a commendation, being denied overtime, and being subject to false accusations are "trivial," but the Seventh Circuit and Northern District are clear that these are not adverse employment actions.  *See* Mem. at 10.  Notably, Plaintiffs now state that "denial of training and advancement" "undeniably *would* affect the financial terms" of Plaintiffs' employment, but did not plead, and do not say in their Response, that the financial terms of their employment *were actually* affected.  Resp. at 22 (emphasis added).  Plaintiffs plead generally that "none of the female officers were allowed to attend" a May 9, 2018 training and "only the male officers were invited" to a June 2018 training; this is insufficient to establish that Kimber, Harris, and Burras were denied training and advancement such that the financial terms of their employment were affected.  *See* FAC ¶ 88(c)(iii)-(iv); *Johnson-Carter v. B.D.O. Seidman, LLP*,

---

[5] The *Hicks* case was not merely about choice of footwear and cabinet access, as Plaintiffs characterize it; to the contrary, the Northern District found that none of the following "c[a]me close to qualifying as an adverse job action":  (1) a direction to not talk to certain staff, causing plaintiff to be delayed one to two hours *each time* he needed to obtain something from those employees; (2) yelling at plaintiff on five to eight occasions, including "berat[ing]" him for wearing certain shoes also worn by other officers; (3) denying access to a filing cabinet with necessary supplies and forms; (4) frequently assigning plaintiff to a "highly disagreeable" location; (5) a transfer to a new duty station for almost eight months; (6) investigating plaintiff for sexual harassment; (7) two drug-tests; (8) taking plaintiff's gun and credentials upon learning plaintiff was under psychiatric care, requiring him to pay $250 to obtain a report stating he could be in charge of his weapon, and delaying return of his gun for nearly two months despite submission of that report; and (9) attempting to prevent attendance at depositions.  *Hicks*, 2004 WL 3119016 at *8-10, *19. These are not a "far cry" from Plaintiffs' allegations (Resp. at 20), but rather clearly support Defendants' Motion.

169 F. Supp. 2d 924, 938-939 (N.D. Ill. 2001) (holding denial of training and non-invitation to meetings did not constitute actionable adverse action). Plaintiffs simply have not pled that Kimber, Harris or Burras were subject to adverse employment actions.[6] As such, Counts I and IV must be dismissed as to Kimber, Harris, and Burras.

_Plaintiffs have not pled a hostile work environment:_ In an attempt to salvage their gender discrimination claims, Plaintiffs now re-characterize Counts I and IV as asserting hostile environment claims—despite having, and foregoing, an opportunity to plead such a claim when they filed their Amended Complaint.[7] _See_ Resp. at 19, 22-23. But, Plaintiffs "cannot amend [their] complaint by raising new claims in response to a motion to dismiss." _Kissiova v. Bayview Loan Servicing, LLC_, No. 15 C 9812, 2017 WL 914779, at *1 (N.D. Ill. Mar. 8, 2017). Plaintiffs specifically pled in Count I that they were subject to "disparate treatment" and "adverse employment actions" in violation of Title VII. FAC ¶ 92; _see Hizer v. S. Bend Tribune_, 31 F. Supp. 3d 986, 1000 (N.D. Ind. 2014) ("Hostile work environment claims are different from disparate treatment claims"). It is clear that they did not, and did not intend to, plead a hostile environment claim in their Amended Complaint.

Moreover, merely reciting the words "hostile environment" does not establish the elements of such a claim. It is clear Plaintiffs could not succeed under a hostile environment theory. A hostile work environment exists where the sex-based conduct is "both subjectively and objectively

---

[6] Plaintiffs are mistaken that it is sufficient to "address the group of women as a whole rather than as individuals." _See_ Resp. at 19; _see also_ 42 U.S.C. § 2000e2(a)(1) (Title VII is not focused on a group, but on whether a particular "individual" is discriminated against because of the "individual's …sex"). Regardless, the allegations identified as pertaining to all Plaintiffs are not adverse actions.

[7] Indeed, Defendants stated in their motion to dismiss Plaintiffs' original Complaint that Plaintiffs were not attempting to plead a hostile environment claim. _See_ Dkt. # 11 at 7; Mem. at 9. Consequently, Plaintiffs knew then – if they truly intended to plead a hostile environment – that their pleadings failed to put Defendants on notice of the claims against them. Their failure to specifically re-plead their gender-discrimination claims as hostile environment claims is thus all the more meaningful.

offensive" and "sufficiently severe or pervasive to alter the conditions of employment such that it creates an abusive working environment." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009). The one hostile environment case cited by Plaintiffs is readily distinguishable: *EEOC v. International Profit Associates* held that allegations that the plaintiff was "routinely called 'bitch' and 'stupid whore' every day for a year and a half, by multiple male employees" were sufficient to state severe or pervasive conduct. 647 F. Supp. 2d 951, 975 (N.D. Ill. 2009). While Plaintiffs allege that Defendant Steward at some point called them "whores" and "bitches," there are no allegations that such behavior was "routine" or ongoing such that it was sufficiently severe or pervasive enough to alter their terms of employment. *See* FAC ¶ 24; *see also Int'l Profit Assocs.*, 647 F. Supp. 2d at 975; *Galloway v. Gen. Motors Serv. Parts Operations,* 78 F.3d 1164, 1167 (7th Cir. 1996), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ("It is obvious that a single, isolated" comment such as "sick bitch" "could not reasonably be thought to constitute sexual harassment"; even if such comments "repeated daily," "bitch" is not always a sex-related term actionable under Title VII).

Plaintiffs also allege, without support, that the withholding of Kimber's badge and the "disparate treatment between the male and female officers" is sufficient to establish a hostile environment. *See* Resp. at 23. These allegations cannot support a hostile environment claim. Disparate treatment is a separate claim than a hostile environment claim, and mere allegations of disparate treatment are insufficient to establish that a hostile environment existed. *See Hizer*, 31 F. Supp. 3d at 1000.

Furthermore, Plaintiffs do not allege that the conduct was severe or pervasive, and this is evidenced by Plaintiffs' Amended Complaint that states Plaintiffs have continued working at CSU for many years (*See* FAC ¶¶ 6, 8, 9, 10, 11 (Plaintiffs' employment ranges from 27 to 18 years at

CSU)).  *See, e.g.,  Stone v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 935, 945 (rejecting hostile environment claim where there was "no factual allegation which would plausibly suggest either the severity or pervasiveness of the identified harassment"); *Bannon v. Univ. of Chi.*, 503 F.3d 623, 629 (7th Cir. 2007) (rejecting hostile environment claim where plaintiff failed to report allegedly offensive conduct over an extended period of time).  As such, Plaintiffs' allegation of a hostile environment in their Response does not save their inadequate claims of gender discrimination in Counts I and IV.

*Sawyer and Robinson have not pled timely adverse actions*:  In addition, the gender discrimination claims made by Plaintiffs Sawyer and Robinson are untimely (Mem. at 8- 11), and, Plaintiffs are incorrect that those claims can be saved by the "continuing violation" doctrine.  As noted above, Plaintiffs have not pled a hostile work environment, and their allegations are insufficient to establish one.  This is significant as the continuing violation doctrine *only* applies to hostile environment claims.  *See Brown v. Ill. Dep't of Nat. Resources*, 499 F.3d 675, 680 (7th Cir. 2007) (rejecting continuing violations doctrine); *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) ("A Title VII plaintiff seeking redress from a series of discrete discriminatory acts cannot avoid the effect of the limitations period by arguing that the discrete acts are 'plausibly or sufficiently related.'") (citations omitted).  Therefore, all allegations regarding alleged adverse actions more than 300 days old are barred by the statute of limitations.  As a result, the only actionable adverse acts allegedly taken against Sawyer and Robinson by any of the Defendants – namely, for Sawyer, an alleged 2015 demotion with loss of stipend, and for Robinson, an alleged 2015 demotion and salary decrease (FAC ¶¶ 34, 51) – are time-barred.  These actions, as alleged by Plaintiffs, occurred approximately four years before this case was filed and therefore must be dismissed as untimely. Mem. at 8-11.

Furthermore, even if this Court determines that Sawyer and Robinson's claims related to their 2015 demotions are not time-barred (which they are), they nonetheless fail to state a claim against the Individual Defendants for purposes of the Section 1983 Equal Protection Clause claim (Count IV). Nowhere does either Robinson or Sawyer allege that Defendant Steward was involved in the decisions to demote them, and as such they have no claim against him. Likewise, Robinson and Sawyer fail to state a claim against Maddox. While Robinson alleges that Maddox was "okay with any decision to demote her" (FAC ¶ 34), and Sawyer alleges Maddox made a "request" that she be demoted (FAC ¶ 51), neither plaintiff adequately alleges that Maddox "possessed an intent to discriminate" against her on the basis of her sex. *See Harrison v. Ill. Dep't of Transp.*, No. 10-cv-4674, 2011 WL 2470626, at *6 (N.D. Ill. June 21, 2011) (to state § 1983 face discrimination claim, plaintiff must allege both that the individual defendant "personally 'caused or participated in' the allegedly discriminatory action" and that the defendant "possessed an 'intent to discriminate on the basis of race'"). Plaintiffs' failure to allege that Maddox and Steward are responsible for their demotions is fatal as a Section 1983 claim against a government actor in her or his individual capacity requires that the individual was personally responsible for the deprivation of a constitutional right. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Palmer v. Marion Cty.*, 327 F.3d 588, 593-94 (7th Cir. 2003); *Harrison* 2011 WL 2470626, at *6 (a plaintiff cannot simply "lump [] each of the individual Defendants together without regard to their respective roles" in the alleged constitutional violation which is at issue). The demotion claims, therefore, must be dismissed against the Individual Defendants on this additional basis.

As for Sawyer's and Robinson's remaining allegations, these allegations do not rise to the level of adverse employment actions. *See* Mem. at 10. For example, Robinson pleads generally that she was removed "from all department training and exercises[.]" FAC ¶ 88(c)(i). While "a

significant pattern of denial of training and performance feedback and non-invitation to meetings"

can be actionably adverse, this applies only if there is an allegation that the financial terms of

Robinson's employment were affected by the harm she alleges. In this instance, Robinson alleges

she was harmed because "she was not informed of the daily operations of the department," but

does not state that this impacted the financial terms of her employment. *See id.*; *Johnson-Carter*,

169 F. Supp. 2d at 938-939. Similarly, Sawyer alleges that in 2018 "Maddox sent an email

containing harsh, embarrassing, belittling, intimidating, and false statements directed at" her in an

effort to damage her reputation and prevent her from becoming Union president – a position she

was certainly not prevented from obtaining, as she currently holds it. FAC ¶¶ 10, 88(b). False

accusations are not adverse employment actions. *Lewis v. Wilkie,* 909 F.3d 858, 868 (7th Cir.

2018). Likewise, disparaging comments intended to damage one's reputation are not actionable

without evidence that such comments resulted "in the subject of the comments being fired or

denied a promotion by someone who hears those comments." *Crosson v. Caremark, Inc.,* 212 F.

Supp. 2d 875, 884 (N.D. Ill. 2002); *see also O'Neal v. City of Chicago*, 317 F. Supp. 2d 823,

828-29 (N.D. Ill. 2004). For these reasons, Sawyer and Robinson's claims must fail.[8]

*Hannah has not pled adverse actions against the Individual Defendants*: Plaintiff Hannah

alleges that she was suspended without pay and this arguably is sufficient for Hannah's Title VII

claim (Count I) to survive against CSU for purposes of Rule 12(b)(6). *See* FAC ¶ 44. However,

Hannah's Section 1983 claim against the Individual Defendants (Count IV) cannot survive as she

has not pled that either Maddox or Steward took any actionable adverse action against her. As

stated above, a Section 1983 claim against a government actor in her or his individual capacity

---

[8] Notably, while Sawyer does allege she was demoted in 2015, this occurred years prior to when the disparaging email was allegedly sent; thus, this email was not an adverse employment action. *See* FAC ¶¶ 51, 81(b).

requires that the individual was personally responsible for the deprivation of a constitutional right. *Kentucky v. Graham*, 473 U.S. at 166; *Palmer,* 327 F.3d at 593-94; *Harrison*, 2011 WL 2470626, at *6.

Hannah alleges that Maddox was her supervisor, but tellingly never alleges that it was Maddox who suspended her without pay (the only potentially actionable adverse action she pleads). *See* FAC ¶¶41, 44. In an effort to make a claim, Plaintiffs point to their allegation that Hannah was accused of "giving Harris and Robinson placards" and as a result, was "threatened with termination[.]" Resp. at 25-26, citing FAC ¶46. Again, accusations of misconduct are not adverse employment actions. *See Lewis*, 909 F.3d at 868. Furthermore, Hannah does not plead that it either Maddox or Steward threatened her with termination, and, regardless, "the Seventh Circuit has made clear that a threat of termination is not an employment action at all under the law." *See Aguilar v. St. Anthony Hosp.*, 207 F. Supp. 2d 747, 756 (N.D. Ill. 2001), citing *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996).

*Dismissal of Plaintiffs' Gender Discrimination Claims:* Thus, in summary, Kimber's, Harris's, and Burras's claims against all Defendants in Counts I and IV must be dismissed for failure to plead adverse employment actions; Sawyer's and Robinson's claims against all Defendants in Counts I and IV must be dismissed for failure to plead adverse employment actions that are timely; and Hannah's claims against the Individual Defendants in Count IV must be dismissed for failure to plead adverse employment actions.

## II.    Count II should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Again, as an initial matter, Plaintiffs now concede that Count II may only conceivably be brought against CSU and not the Individual Defendants. Resp. at 14. In addition, Count II must be dismissed in its entirety for failure to plead the elements of a Title VII retaliation claim: Plaintiffs

fail to plead that they engaged in protected expression that was causally linked to an adverse employment action against each plaintiff.  *See* Mem. at 12-14.

*Protected Expression*:  Contrary to Plaintiffs' unsupported assertion, Defendants did argue that "Plaintiffs Failed to Allege Protected Expression with Respect to All Plaintiffs Other than Harris and Hannah."  Mem. at 12; *see also* Resp. at 27.  Plaintiffs concede that protected activity must be specifically identified and any complaints made must clearly be on the basis of a protected class.  Resp. at 27; Mem. at 12-13.  They then generically argue (without citing any supporting allegations in their Amended Complaint) that Plaintiffs generally engaged in protected expression through alleged grievances, meetings, and complaints.  Resp. at 27.  However, this statement is contradicted by Plaintiffs' Amended Complaint, which fails to include any allegations that Plaintiffs Kimber, Sawyer, or Burras engaged in any protected activity.  *See Allen v. City of Chi.*, 828 F. Supp. 543, 553 (N.D. Ill. 1993) ("each plaintiff will prevail only upon an individualized showing of racial discrimination"); *see also Brewton v. City of Harvey*, 285 F. Supp. 2d 1121, 1128 (N.D. Ill. 2003) (severing claims from multiple plaintiff-employees arising out of alleged discrimination by same employer).  Indeed, Plaintiffs only point to protected activity allegedly engaged in by Plaintiffs Robinson and Harris. Resp. at 27.  Yet, as Defendants point out in their Motion, the undated grievance by Robinson is too generic to meet the pleading standard required to maintain a retaliation claim.  Mem. at 12-13.  Thus, at best, only Plaintiffs Harris and Hannah may have sufficiently alleged protected activity – but, as explained below, their retaliation claims nonetheless fail because they are not causally-linked to any adverse action.

*Adverse Employment Actions*:  Plaintiffs do not even attempt to respond to Defendants' arguments that their retaliation count fails because they do not allege they were subjected to adverse employment actions which were causally linked to any protected expression.  Namely,

Plaintiffs failed to respond to Defendants' arguments that (1) the purported actions allegedly taken against Plaintiffs (and, more specifically, Hannah and Harris) were not actionable adverse actions; and, (2) with respect to Plaintiff Harris, the adverse action purportedly taken against her occurred *prior to* the alleged protected activity in which Harris purportedly engaged. Instead, Plaintiffs merely characterize Defendants' arguments as "groundless" and paste into their Response—without any analysis—Paragraph 88 of their Amended Complaint (which does not even refer to all of the Plaintiffs). Resp. at 28. Plaintiffs' Response is frankly confusing. Not only do the vast majority of allegations made by Plaintiffs fail to rise to the level of adverse employment actions, *see* Section I.a, s*upra*, Plaintiffs do not attempt to refute Defendants' argument that even if Hannah and Harris engaged in protected activity, there is no adverse employment action casually linked to that activity. Count II, therefore, should be dismissed.

**III.     Count III should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.**

Plaintiffs' claim of civil conspiracy against the Individual Defendants fails to state a claim due to the failure of their underlying constitutional claim (Count IV, *see infra* Section IV). *See Elias v. Stewart Title of Ill.*, No. 9 C 6773, 2011 WL 1157534, at *3 (N.D. Ill. Mar. 29, 2011) (dismissing conspiracy claim based on dismissal of underlying discrimination claim).

In addition, Count III also fails to adequately state a claim under Rule 12(b)(6) for several independent reasons.

**a.     Count III is barred by the intra-corporate conspiracy doctrine.**

Plaintiffs' arguments regarding the intra-corporate conspiracy doctrine ("ICD") misinterpret the law and exceptions surrounding the doctrine. Moreover, the authority Plaintiffs rely upon is distinguishable. As explained in Defendants' Motion, the ICD holds that a conspiracy cannot exist solely between members of the same entity. *Stone v. Bd. of Trs. of N. Ill. Univ.*, 38 F.

Supp. 3d 935, 943 (N.D. Ill. 2014).[9]  The purpose of the doctrine is to prevent managers of an entity jointly pursuing its lawful business from becoming "conspirators" when acts within the scope of their employment are said to be discriminatory or retaliatory.  *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994) (citations omitted).  There are two exceptions to the ICD:  where employees are motivated solely by personal bias or where the actions taken are part of an extensive discriminatory scheme prevalent through the entity.  *See Hartman v. Bd. of Trs. of Cmty. Coll. Dist. 508*, 4 F.3d 465, 470-71 (7th Cir. 1993).  Neither of these exceptions is alleged here.

The crux of Plaintiffs' argument is that civil rights violations are not the lawful business of CSU, so the ICD is therefore inapplicable to Plaintiffs' claims.  *See* Resp. at 14-15.  However, the Northern District rejected this exact argument in a case much more analogous to the present matter than the cases cited by Plaintiffs.  *See Doe v. Board of Educ. of Hononegah Cmty. High Sch. Dist. No. 207*, 833 F. Supp. 1366, 1382 (N.D. Ill. 1993) (dismissing civil conspiracy claim on 12(b)(6) motion).  In *Hononegah*, the court rejected plaintiff's argument that the ICD did not apply because the wrongful actions of individual defendants were taken outside the scope of their official positions, reasoning that "[i]f the measure of the applicability of the [ICD] was keyed to the alleged wrongdoing of corporate officers, it would quickly become a meaningless concept."  *Id.* Indeed, in every case of civil conspiracy to violate constitutional rights, there are necessarily accusations of wrongful conduct.  *See id.*  The correct test under the ICD "is not the wrongful

---

[9] While there was a typo in Defendants' Motion in which the reporter for *Stone* was given in one citation as "F.3d" rather than "F.Supp.3d," *Stone* is correctly cited throughout the Motion, including in the paragraph preceding the one in which the incorrect reporter was given.  It is therefore puzzling that Plaintiffs state that the "case name and citation do not exist" and that thus, the quote that "a conspiracy cannot exist solely between members of the same entity," cited to both *Stone* and *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999), also does not exist.  Resp. at 16, note 1.  *Stone* and that quote certainly both exist.

nature of the conspirators' actions but whether the wrongful conduct was performed within the scope of the conspirators' official duties." *Id.*

The ICD thus requires the court to determine whether or not defendants were only able to partake in the allegedly wrongful conduct by virtue of the position they held. *Id.* Given that the Individual Defendants were allegedly supervisors of a police force of which Plaintiffs were members, and that each allegedly wrongful action was connected to that supervisory role, the actions at issue were performed within the scope of official duties, and the ICD bars Plaintiffs' civil conspiracy claim. *See* FAC ¶ 117.

The cases cited by Plaintiffs for the proposition that "civil rights violation is not the business of a University" are largely distinguishable from the current matter – in large part because they involve police misconduct outside of the employment sector. *See* Resp. at 14-15; *McDorman v. Smith,* No. 05 C 0448, 2005 WL 1869683, at *1 (N.D. Ill. Aug. 2, 2005) (ICD did not apply where police "took concerted action . . . to harm a single individual" through falsifying a police report when a citizen was injured by an officer); *Salto v. Mercado,* No. 96 C 7168, 1997 WL 222874, at *2 (N.D. Ill. Apr. 24, 1997) (where plaintiff – a citizen, not an officer – alleged that "defendants conspired to physically abuse and falsely arrest him in retaliation for complaining of police misconduct and for filing a civil lawsuit," ICD did not apply); *see also Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 02 C 9303, 2003 WL 22176077, at *1,5 (N.D. Ill. Sept. 18, 2003) (where employer and employees are accused of conspiring together, ICD must apply).[10] Police

---

[10] While Plaintiffs' Amended Complaint only names the Individual Defendants in their Section 1983 civil conspiracy claim (Count III), their Section 1983 gender discrimination claim (Count IV) – upon which Count III is reliant – clearly includes allegations related to Defendant CSU. To be precise, Plaintiffs allege that *all* Defendants, including CSU, shared a common goal of gender discrimination. *See* FAC ¶117 ("Defendants Maddox and Steward, along with Chicago State University, are responsible for the acts of Security Department supervisors and command staff, who were acting … pursuant to a policy, custom, and/or pattern of gender discrimination …." (emphasis added)). This allegation makes clear that Plaintiffs are not alleging that Individual Defendants acted completely independent of Defendant CSU, but to the

brutality or use of excessive force amounts to actionable criminal conduct, and as such these cases are clearly different from employment decisions that are said to be either discriminatory or retaliatory. The Court should not afford any weight to the cases Plaintiffs cite regarding police misconduct.

Plaintiffs also describe the conspiracy alleged in this case as "a 'classic charge' of retaliation" so as to prevent application of the ICD – that is, they now allege not that Defendants conspired to discriminate against them, but that they conspired to *retaliate* against them. Resp. at 15; *but see* FAC ¶ 105. Despite Plaintiffs' assertions, the mere existence of an allegation that a conspiracy agreement contemplated retaliation does not summarily nullify the ICD. Indeed, the Seventh Circuit has recognized that managers of an entity do not become conspirators when their actions taken in connection with their employment "are said to be discriminatory or *retaliatory*." *Wright*, 40 F.3d at 1508, quoting *Travis v. Gary Community Mental Health Center*, 921 F.2d 108, 110 (7th Cir. 1990) (emphasis added). Clearly, the ICD may be applied to cases wherein employment actions, such as those complained of by Plaintiffs, are alleged to be retaliatory. *See Stone*, 38 F.Supp.3d at 949-950 (dismissing § 1983 conspiracy claim, including allegations of retaliation, arising out of employment decisions pursuant to the ICD). Further, Plaintiffs' arguments do not articulate either of the two well-defined exceptions to the ICD, neither of which is a "classic charge" of retaliation. *See* Resp. at 14-17.[11] As a result, Plaintiffs' arguments in opposition to the application of the ICD due to the existence of retaliation allegations is without merit. The ICD was created to prevent employment decisions made as part of an entity's general management, such as the actions described by Plaintiffs, from morphing into a vehicle for a claim

---

contrary, alleges Individual Defendants acted in concert with CSU to allegedly discriminate against Plaintiffs. For this reason, as in *Emery*, the ICD should bar Count III. *See* 2003 WL 22176077.

[11] Because Plaintiffs failed to identify or argue that either of the two well-defined exceptions to the ICD apply in this case, Plaintiffs waived any argument that an exception is applicable in the current matter.

of civil conspiracy against individuals acting on behalf of the entity. Plaintiffs' allegations are precisely the sort of interactions contemplated by the ICD and the Court should dismiss Plaintiffs' civil conspiracy claims as a result.

  **b.   Count III fails to allege the elements of conspiracy.**

Despite Plaintiffs' assertions, a civil conspiracy claim also requires more than circumstantial allegations that could possibly result in adequate proof after inferences are made. Instead, a plaintiff alleging a civil conspiracy claim must show that the conspirators reached an agreement to deprive a plaintiff of their constitutional rights and overt acts in furtherance of such an agreement. *See Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Notably, Plaintiffs cite cases that were decided before the Supreme Court's decisions in *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) for the proposition that the pleading standard for a conspiracy claim is low. *See* Resp. at 29. However, even the most lenient descriptions of the pleading requirement for such a claim require Plaintiffs to allege the parties involved, the general purpose of the conspiracy, and the approximate date of the conspiracy so as to give notice as to what is being charged. *See Loubser v. Thacker*, 440 F.3d 439, 442-43 (7th Cir. 2006). In this instance, Plaintiffs have failed to meet their pleading burden.

For instance, Plaintiffs fail to sufficiently allege a meeting of the minds between the Individual Defendants, a required element of a civil conspiracy claim. *Lyttle*, 528 F.Supp.2d at 831; *see also Cui v. Elmhurst Police Dep't*, No. 14 C 8330, 2015 WL 5462138, at *6 (N.D. Ill. Sept. 17, 2015) (finding that allegations of individual conduct by defendants without mention of any mutual action or intent to deprive plaintiff of his right were insufficient to withstand motion to dismiss). Because Defendants' argument that Plaintiffs' failure to plead a meeting of the minds is dispositive of their civil conspiracy claim was not addressed in Plaintiffs' lengthy Response, Plaintiffs have waived this point. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538

(7th Cir. 2012) ("where party fails to make argument in response to motion to dismiss, argument that dismissal is inappropriate is waived"). Even if the issue had not been waived, Plaintiffs' Amended Complaint includes no allegations that come close to alleging mutual action or intent on the part of the Individual Defendants, which is dispositive of the claim. *See Cui*, 2015 WL 5462138 at \*6.

For the reasons set forth above, Plaintiffs have failed to plead a claim for civil conspiracy against the Individual Defendants, thus requiring the dismissal of Plaintiffs' conspiracy claim in Count III.

## IV. Counts III and IV should be dismissed with prejudice under Rule 12(b)(1) pursuant to the doctrine of sovereign immunity

Assuming *arguendo* that all or part of Plaintiffs' claims in Counts III or IV survive for purposes of Rule 12(b)(6) (which they should not), they nonetheless fail under the Eleventh Amendment. Plaintiffs now apparently concede that CSU is immune from suit for these constitutional claims, since Counts III and IV are brought specifically "Against Individual Defendants." FAC at Counts III and IV. Similarly, the law is clear that the Eleventh Amendment also bars such claims against the Individual Defendants in their official capacity. Mem. at 5.

Apparently conceding that Counts III and IV against the Individual Defendants in their official capacities are barred, Plaintiffs now assert that these claims are brought against Maddox and Steward only in their individual capacities. Resp. at 10-12. While it is insufficient to merely use the phrase "individual defendants" to specify in which capacity public officials are sued, Plaintiffs' clarification still fails to salvage their constitutional claims.

Significantly, "a suit nominally against state employees in their individual capacities that demonstrably has the identical effect as a suit against the state is . . . barred." *Luder v. Endicott*, 253 F.3d 1020, 1023 (7th Cir. 2001). In other words, allowing Plaintiffs to receive front pay, back

pay and other monetary damages from Maddox and Steward in their individual capacities is the same as asking CSU to pay these funds, thereby imposing a burden on the public treasury. The Eleventh Amendment unequivocally prohibits this type of relief. *Luder*, 253 F.3d at 1023 (holding that motion to dismiss should have been granted where money would flow from state treasury to plaintiffs); *Lenea v. Lane*, 882 F.2d 1171, 1178 (7th Cir. 1989) (holding Eleventh Amendment bars suit where individual capacity defendants have no power to pay back wages and such sums would require payment from the state's treasury); *Quern v. Jordan*, 440 U.S. 332, 337 (1979) ("a suit . . . seeking to impose a liability which must be paid from public funds in the state treasury is barred"). As such, Counts III and IV must be dismissed as to the Individual Defendants, especially to the extent Plaintiffs seek monetary relief.[12]

## V.     Count V should be dismissed under Rules 12(b)(1) and/or 12(b)(6)

### a.     Count V should be dismissed with prejudice under Rule 12(b)(1) pursuant to statutory immunity

Plaintiffs cite one case, *Currie v. Lao*, 148 Ill. 2d 151, 592 N.E.2d 977 (1992), in an attempted rebuttal of Defendants' persuasive argument that the Illinois State Lawsuit Immunity Act ("ISLIA"), 745 ILCS 5/1, bars Plaintiffs' claim of intentional infliction of emotional distress ("IIED") in any venue other than the Court of Claims. *Compare* Mem. at 5-6 *with* Resp. at 12. However, *Currie* discusses when claims *against a State employee* are not barred by ISLIA, but

---

[12] While Plaintiffs cannot receive monetary relief, the *Ex parte Young* doctrine permits a private party to sue individual state officials (but not state agencies) in their official capacities for prospective relief to enjoin ongoing violations of federal law. *Council 31 of Am. Fed'n of State, Cty. and Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012), citing *Ex parte Young*, 209 U.S. 123 (1908). If Plaintiffs had adequately stated a claim for gender discrimination against Individual Defendants—which they have not—they would be entitled to maintain such a claim for injunctive relief only. Furthermore, because Defendant Steward no longer is employed by CSU, injunctive relief against him is not possible. Under Federal Rule 25, if a public officer ceases to hold office his "successor is automatically substituted as a party." Plaintiff Robinson is the only Lieutenant CSU currently employs.

does not address when claims against the State itself are barred. Thus, Plaintiffs have effectively conceded that ISLIA bars Count V as to CSU – which it does. *See* Mem. 5-6.

Moreover, *Currie* does not save Plaintiffs' claims against the Individual Defendants either. While Plaintiffs now argue that Maddox and Steward are sued in their individual capacities, Resp. at 10-12, case-law is clear that individual-capacity suits are barred under ISLIA where "judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). Plaintiffs have cited no authority in rebuttal of this proposition. As noted in Section IV, any relief against Maddox or Steward would in actuality be relief imposed on CSU. As such, ISLIA bars Count V against the Individual Defendants.

Furthermore, as stated in *Currie*, "[w]here the charged act of negligence arose out of the State employee's breach of a duty that is imposed on him solely by virtue of his State employment, sovereign immunity will bar maintenance of the action in circuit court." 148 Ill. 2d 151, 159 (1992). Defendants' alleged "harassment and gender biased behavior towards Plaintiffs" is <u>not</u>, as Plaintiffs conclude without analysis, independent of their employment duties. *See* Resp. at 12. As Plaintiffs later concede, "the [I]ndividual Defendants' [alleged] harassment and gender biased behavior toward Plaintiffs which compromise their tort claims *are undeniably factually related to incidents of sexual harassment*." *Id.* at 13 (emphasis added). Plaintiffs could not allege, as they do in conclusory fashion, that Maddox and Steward illegally treated them disparately in their employment on the basis of sex in violation of law if Maddox and Steward were not CSU employees. That is, there is no general duty imposed on the general public to not engage in gender-based harassment or acts of gender-bias; Title VII prohibits such conduct *in employment* and the Equal Protection Clause prohibits such conduct *by the State*. As such, the alleged tort of IIED "arose out of" the Individual Defendants' "breach of a duty that is imposed on [them] solely

by virtue of [their] State employment," and as such can only be brought in the Court of Claims. *See Currie,* 148 Ill. 2d at 159.

      **b.**    **Count V also should be dismissed with prejudice under Rule 12(b)(1) pursuant to state-law preemption**

Despite Plaintiffs' arguments, neither *Naeem* nor *Maksimovic* supports Plaintiffs' contention that the Illinois Human Rights Act ("IHRA") does not preempt their IIED claim. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593 (2006); *Maksimovic v. Tsogalis,* 177 Ill.2d 511, 687 N.E.2d 21 (1997); *see also* 775 ILCS 5/8-111(C).[13]  As stated above, Plaintiffs acknowledge that their IIED claim is "undeniably factually related to incidents of sexual harassment."  Resp. at 13. Such characterization is aligned with their Amended Complaint, in which they clearly state that it is "Defendants' actions in *discrimination* against Plaintiffs *based on gender*" that constitutes "extreme and outrageous" conduct.  FAC ¶ 125 (emphasis added).  "The distinction between claims that are preempted and claims that are not preempted turns on the legal duty that the defendant allegedly breached"; the "proper inquiry" is whether Plaintiffs "can prove the elements of [IIED] independent of legal duties furnished by the IHRA."  *Naeem*, 444 F.3d at 604.  Plaintiffs cannot.

In their Response, Plaintiffs identify which of their allegations constitute the "extreme and outrageous" conduct that makes up their IIED claim.  Resp. at 31-32.  These same allegations also make up their Title VII claims; the vast majority of the allegations, if not all, only relate to the duty also furnished by the IHRA to not engage in harassment or discrimination on the basis of sex.  *See*

---

[13] Along with *Naeem* and *Maksimovic*, Plaintiffs cite three Illinois cases (*Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill.App.3d 1027, 714 N.E.2d 1002 (Ill. App. 1999); *Sutton v. Overcase*, 251 Ill.App.3d 737, 623 N.E.2d 820 (1993); *Pavilon v. Kaferly*, 204 Ill.App.3d 235, 561 N.E.2d 1245 (1990)) from over twenty years ago, all of which rely on language from an even older case, *Ritzheimer v. Ins. Counselors, Inc.,* 173 Ill.App.3d 953, 964, 527 N.E.2d 1281 (1988).  Resp. at 13.  Plaintiffs provide no analysis of how their claims are similar to the cases they cite – because they cannot.  Furthermore, the Seventh Circuit has not adopted a bright-line rule that IIED claims are not preempted by the IHRA.  *See Naeem*, 444 F.3d at 604.

775 ILCS 5/2-102.  As Plaintiffs' IIED claim is "supported by factual allegations identical to those set forth in [their] Title VII sexual-harassment claim," Count V is preempted.  *See Quantock v. Shared Mktg. Servs., Inc.*, 312 F.3d 899, 905 (7th Cir. 2002); *see also Bannon*, 503 F.3d at 630 (where plaintiff's "primary allegation is that [her supervisor] caused her emotional distress by his use of racial slurs," it was supervisor's "alleged breach of his duty under the IHRA to refrain from discrimination that [Plaintiff] claims caused her distress" and IIED claim was preempted); *Unruh v. Humana Ins. Co*., No. 17 C 1782, 2019 WL 4648934, at *11 (N.D. Ill. Sept. 24, 2019) (where plaintiff's IIED and tortious interference claims were based on engagement in protected activity under IHRA and FMLA, "claims are inextricably linked to the civil rights violations").  Plaintiffs cannot prove the elements of IIED independent of the duty to not engage in workplace gender-based discrimination and harassment furnished by the IHRA, and as such, Count V is preempted.  *See Naeem*, 444 F.3d at 604.

Even if, *arguendo*, this Court were to decide that certain allegations involve some duty independent of the duty arising from the IHRA, those factual allegations comprising the IIED claim that are identical to the factual allegations comprising  the discrimination claims should be dismissed, because Count V, in those circumstance, would be partially preempted.  *See Bannon*, 503 F.3d at 630; *see also Unruh*, 2019 WL 4648934 at *12.

**c.**     **Count V also should be dismissed under Rule 12(b)(6) for failure to state a claim**

As an initial matter, Plaintiffs fail to respond to Defendants' argument that the allegations making up their IIED claim are barred by two-year statute of limitations.  *See* 735 ILCS 5/13-202; Mem. at 14; Resp. at 31-33.  As such, Plaintiffs have waived any argument that the two-year limitations period does not apply, or some exception to such period does apply, to Count V.  *See G & S Holdings LLC*, 697 F.3d at 538.  Defendants acknowledge the alleged conduct purportedly

occurring on or after January 18, 2017 would be timely. However, that alleged conduct is not actionable.

Plaintiffs offer a list of conduct they assert establishes their IIED claim, Resp. at 32-33, but only a small subset of these allegations may be timely. For example, Plaintiffs list a 2009 incident in which Burras allegedly was not given a commendation and two male officers were. Resp. at 33 (citing FAC ¶ 81). Not only is this not "extreme and outrageous" conduct, it is untimely. Likewise, Plaintiffs' timely allegations clearly do not rise to the level of "extreme and outrageous" conduct. Reprimanding Kimber for using a fax machine, reprimanding Harris for failing to call after a medical emergency, reprimanding Burras for striking a fixed object on patrol and for a vehicular accident, removing Robinson from department trainings, and removing Hannah from parking-lot meetings are expressly the sort of "personality conflicts and questioning of job performance" that "frequently . . . produce concern and distress" but "are unavoidable aspects of employment" and do not support an IIED claim. *See* FAC ¶¶ 59, 67, 76-78, 88(c)(i), 88(c)(v); *Van Stan v. Fancy Colours & Co.,* 125 F.3d 563, 567 (7th Cir. 1997). Plaintiffs seem to focus in particular on two allegations – first, that Steward called "all women" "whores" and "bitches" at some unidentified time, FAC ¶ 24, and second, that in 2015, a picture of Sawyer "with her eyes poked out" was put on the bulletin board in the Investigator's Office, and remains there – but these too are insufficient to state an IIED claim. *See Bannon*, 503 F.3d at 630 (allegations that plaintiff was "excluded from some meetings, . . . denied the responsibility of organizing meetings, . . . and ha[d] a mean boss who sometimes told her she was stupid" insufficient to state a claim for IIED); *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (allegations that plaintiff was subject to unjustified reprimands, forced out of a management position, not given a promised promotion, given less lucrative accounts, excluded from activities, and eavesdropped on at work

insufficient to state an IIED claim); *Briggs v. N. Shore Sanitary Dist.*, 914 F. Supp. 245 (N.D. Ill. 1996) (allegations that plaintiff was subjected to racially offensive words and conduct, denied training, and excluded from office activities were insufficient to state an IIED claim). None of these incidents, or any of those pled by Plaintiffs, rise to the level of "extreme and outrageous" conduct – particularly as many of these allegations rely on a corresponding allegations that a male officer was not treated the same way, which is a disparate treatment claim, not an IIED claim. *See* Section V.b, *supra*.

Furthermore, Plaintiffs' allegations involved conduct that allegedly occurred years ago, as far back as 2003, and no reasonable person would continue employment for decades in an environment that caused her severe emotional distress. *See Williams v. Phillips 66 Co.*, 72 F. Supp. 3d 938, 961 (S.D. Ill. 2014).

For all of these independent reasons, Count V should be dismissed under Rule 12(b)(6).

## VI.    Conclusion

For the reasons discussed herein, Defendants' Motion to Dismiss should be granted, and Plaintiffs' First Amended Complaint dismissed with prejudice as set forth above and in Defendants' Motion and supporting Memorandum.

Dated: December 9, 2019

Respectfully submitted,

/s/ Lisa Parker

LISA J. PARKER         (#6230008)
MARY E. DEWEESE    (#6326812)
120 South Riverside Plaza, Suite 2200
Chicago, IL  60606
Telephone  (312) 655-1500
Lisa.Parker@huschblackwell.com
Mary.Deweese@huschblackwell.com

JOHN W. BORKOWSKI   (#6320147)
1251 North Eddy Street, Suite 200
South Bend, IN  46617
Telephone  (574) 239-7010
John.Borkowski@huschblackwell.com
**_Attorneys for Defendants_**

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 9th day of December, 2019, a copy of the above and foregoing document was filed with the Clerk of Court using the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

/s/ Lisa Parker