**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LIEUTENANT SHARON ROBINSON, DIRECTOR WINONA HANNAH, SERGEANT MARCELLA SAWYER, TELECOMMUNICATIONS CARLA KIMBER, SERGEANT VERONICA HARRIS and OFFICER LAWANDA BURRAS, )<br><br>Plaintiffs, )<br><br>v. )<br><br>CHICAGO STATE UNIVERSITY, CAPTAIN JAMES MADDOX, individually and in his official capacity, and LIETUENANT CHARLES STEWARD, individually and in his official capacity, )<br><br>Defendants. ) | Case No. 19-cv-00395<br><br>Honorable Martha Pacold<br>Honorable Magistrate Judge Harjani |

**DEFENDANTS' MOTION FOR CLARIFICATION
AND TO STAY DEFENDANTS' ANSWER AND DISCOVERY**

Defendants Chicago State University, Captain James Maddox, and Lieutenant Charles Steward (collectively "Defendants"), by and through their attorneys Husch Blackwell LLP, respectfully request clarification of the January 21, 2022 ruling of this Court on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 88). Specifically, Defendants request clarification with respect to four aspects of the Court's ruling that are identified herein. This clarification is critical for Defendants to understand the scope of Plaintiffs' claims that remain in the litigation for purposes of answering the First Amended Complaint and for the parties to engage in cost-effective discovery. To this end, Defendants also respectfully ask the Court to stay

1

discovery and Defendants' Answer, which is due February 28, 2022, until the Court rules on the instant Motion for Clarification.

On the date this motion was filed, Defendants' counsel contacted Plaintiffs' counsel to ask if Plaintiffs object to or would join in Defendants' motion. As of the filing date and time, Defendants have not received a response.

**Background:**

On January 21, 2022, this Court held a hearing on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. This hearing is documented in a 72-page transcript that includes the Court's reasoning as to its ruling. *See* Transcript (Doc. 90). During the hearing, the Court (1) dismissed Count I ("Gender Discrimination in Violation of Title VII") against Defendants Maddox and Steward ("Individual Defendants") and against Defendant Chicago State University ("University"), but only with respect to discrete adverse actions predating March 24, 2018; (2) dismissed Count II ("Unlawful Retaliation under Title VII") against the Individual Defendants, but not against the University; (3) declined to dismiss Count III ("Conspiracy"), which was brought only against the Individual Defendants; (4) declined to dismiss Count IV ("Section 1983 - Equal Protection Deprivation Based on Gender"), except as against Defendant Steward for claims arising out of Plaintiff Hannah's February 2018 suspension; and (5) dismissed Count V (Intentional Infliction of Emotional Distress) against all Defendants. *Id.* Also on January 21, 2022, Judge Pacold made a minute entry to "to clarify and resummarize the holding more precisely, and without changing the ruling or any of the reasons explained at the hearing." Doc. 88. The minute entry consists of one paragraph describing the rulings on each Count, but does not address the issues for which Defendants now request clarification. *Id.*

**Request for Clarification #1**

Count I of Plaintiffs' First Amended Complaint alleges Defendants discriminated against them on the basis of their sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Doc. 41, at 22. In their Motion to Dismiss, Defendants argued that Count I must be dismissed for failure to state a claim because (1) Plaintiffs Kimber, Harris, and Burras do not plead adverse actions; (2) Plaintiffs Sawyer and Robinson's alleged adverse employment actions are time-barred; and (3) Plaintiffs have not pled a hostile work environment. Defendants' Reply in Support of their Motion to Dismiss (Doc. 62), at 4-9. Acknowledging that a Title VII claim is time-barred if not brought within 300 days of the allegedly discriminatory act, this Court allowed Count I to proceed against the University, but only with respect to discrete adverse actions occurring on or after March 24, 2018. Doc. 88, at 1; Doc. 90, at 31. Specifically, the Court held that "discrete adverse actions predating March 24, 2018 are time-barred" and "cannot benefit from the continuing violation doctrine." Doc. 90, at 6, 33, 37, 66, 71.

Despite this straightforward aspect of the ruling, matters have been significantly complicated by Plaintiffs' factual allegations spanning sixteen years (2003-2019) and this Court's ruling that Plaintiffs have adequately pled a hostile-environment claim under Title VII. *Id.* at 25. During the January 21 hearing, the Court noted that "Count 1 does not use the specific words 'harassment' or 'hostile work environment,'" but looked to Plaintiffs' general "Factual Allegations" and concluded that "[P]laintiffs likely conflated disparate treatment discrimination with hostile work environment." *Id.* Given the Court's phrasing, Defendants first request clarification as to whether Count I is construed by the Court as a disparate-treatment claim *in addition to* a hostile-environment claim. If so, Defendants request further clarification as to

3

whether, in the Court's view, only Title VII disparate-treatment claims after March 24, 2018, are viable.

### Request for Clarification #2

Defendants request clarification regarding the time period for Plaintiffs' hostile work environment claim as construed by the Court in Count I. While some of Plaintiffs' allegations provide the date or at least the year in which they occurred, the majority are undated. At one point, however, this Court stated that Plaintiffs' allegations of gender-based discrimination range "from 2009 to the date of filing." Doc. 90, at 27.

As the Court noted, Defendants argued:

> Plaintiffs make a range of conclusory allegations of disparate treatment ranging from 2009 to 2014, before turning to allegations specific to each Plaintiff. *See* FAC ¶¶ 12–27. They do not identify to which, if any, of the Plaintiffs these allegations refer. These claims are all time-barred and are too conclusory and vague to pass muster.

Doc. 90, at 33 (citing Doc. 49, at 9, n.6). The Court agreed that Plaintiffs failed to "respond specifically to this argument," but accepted Plaintiffs' general allegation that the continuing violation doctrine revived their time-barred claims because the "ongoing insults, harassment, preclusion, and retaliation . . . make up one vast cumulative violation against the female officers occurring over a series of years." *Id.* (quoting Doc. 61, at 25).

During the hearing, the Court concluded: "[B]ecause [D]efendants assume that [P]laintiffs did not plead a hostile work environment claim, they did not argue that the allegations spanning from 2009 to 2014 are not saved by the continuing violation doctrine." *Id.*, at 34. Because the Court found that Defendants had not addressed factual allegations from 2009 to 2014, the Court held "for the purposes of this motion" that Plaintiffs' allegations from 2009 to 2014 form part of

4

[P]laintiffs' hostile work environment claims and are thus saved by the continuing violation doctrine. *Id.*, at 34.

Defendants request clarification as to why the Court referred to this specific timeframe (2009-2014). Furthermore, Defendants seek clarification as to why there is a four-year gap (2014-2018) between the allegations the Court deemed saved by the continuing-violation doctrine (2009-2014) and the timely claims (post-March 24, 2018). Defendants seek to understand why the Court left the factual allegations from 2003 to 2009 and 2015 to March 23, 2018, unaddressed and respectfully ask that the Court clarify whether its holding is that viable hostile environment allegations are between 2009 and 2014, but not during the other time periods.

Clarification of these issues is crucial because the continuing violation doctrine, which saves certain allegations of discriminatory conduct that would otherwise be time-barred, only applies to hostile environment claims. *See Brown v. Ill. Dep't of Nat. Resources*, 499 F.3d 675, 680 (7th Cir. 2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) (citations omitted). The continuing violation doctrine involves a fact-intensive, case-by-case analysis. First, the parties must determine whether the act is a "discrete" discriminatory act or an act contributing to the hostile work environment. *McDonough v. City of Chicago*, 743 F. Supp. 2d 96 (N.D. Ill. 2010). If the act is not "discrete," the court must assess whether the series of acts constitutes a continuing violation. Factors to consider include: (1) whether the acts involve the same subject matter; (2) the frequency with which the acts occur; and (3) the degree of permanence of the alleged acts of discrimination that should trigger an employee's awareness and duty to assert his rights." *McDonough*, 743 F. Supp. 2d at 970 (quoting *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002)). As to the second factor, temporal gaps between the alleged discriminatory acts are a "critical limiting principle." *Lucas v. Chicago Transit Auth.*, 367 F.3d

714, 727 (7th Cir. 2004). In addition to the time between acts, the court also looks to frequency of the acts. *See, e.g.*, *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004). Thus, in order to adequately respond to Plaintiffs' arguments, Defendants request clarification on the timeframe of Plaintiffs' factual allegations that bear on the application of the continuing violation doctrine.

### Request for Clarification #3

Defendants seek clarification regarding the Court's application of the Section 1983 statute of limitations to Count IV.

In Count IV, Plaintiffs allege that the Individual Defendants deprived them of equal protection based on their gender in violation of 42 U.S.C. § 1983. Doc. 41, at 27-28. In response, Defendants argued that Plaintiffs failed to plead any actionable and timely adverse actions taken against them, except for Plaintiff Hannah's February 2018 suspension. Doc. 62, at 9-10. In addressing whether Plaintiffs' claims were timely, the Court found that "the appropriate statute of limitations for [§] 1983 cases filed in federal court in Illinois is . . . two years." Doc. 90 at 29-30. The Court also addressed some of Plaintiffs' factual allegations related to their § 1983 claims. First, it held that the "baseless investigation [in April 2018] against Hannah for allegedly giving Harris and Robinson parking placards, leading to threats of termination and forcing Hannah to hire an attorney for a hearing" is not an actionable employment action under [§] 1983. *Id.*, at 36. Then, the Court held that Plaintiff Hannah's alleged suspension without pay in April 2018 for failure to purchase a parking permit was an adverse employment action. *Id.* In addition, the Court held that, "because [P]laintiffs filed the initial complaint on January 18, 2019, both 2015 demotions [of Plaintiffs Robinson and Sawyer] would be well outside the two-year statute of limitations for [§] 1983 claims." *Id.* at 31.

While these findings were specific to Plaintiffs' § 1983 claims, it is unclear to Defendants whether the Court was speaking to the Title VII claim, the § 1983 claim, or both. Notably, the Court applied the Title VII's 300-day limitations period to several of Plaintiffs' factual allegations and limited Plaintiffs claims by holding "all discrete discriminatory acts undertaken prior to March 24, 2018" are time-barred and cannot benefit from the continuing violation doctrine. *See id.*, at 33. Yet, the Court does not appear to similarly apply the § 1983 statute of limitations analysis to Count IV. For this reason, Defendants request clarification on the Court's application of the statute of limitations to Plaintiffs' § 1983 claim, *i.e.*, whether certain alleged "discrete discriminatory acts" are time-barred similarly to Plaintiffs' Title VII claims. Furthermore, because the Court found that Count IV also included a hostile-environment claim, Defendants request clarification on the relevant timeframe and the application of the continuing violation doctrine to this claim.

### Request for Clarification #4

Lastly, the Court's recent ruling leaves Defendants unable to respond to what the Court construes as Plaintiffs' hostile-environment claims to the extent they are premised on the continuing violation doctrine. For the continuing violation doctrine to apply (which this Court presumed it did), there must be at least one allegedly discriminatory act that occurred within the statute of limitations that is not "discrete." *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14, 122 S. Ct. 2061 (2002)). Unless the Court clarifies which (if any) alleged act meets this definition for purposes of a motion to dismiss, Defendants are unable effectively to analyze or even respond to Plaintiffs' hostile environment claims. The continuing violation doctrine only applies to time-barred acts that are sufficiently related to the non-discrete act within the statutory period as to conclude the acts form a "series." *Morgan*, 536 U.S. at 103, 117; *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697,

708 (7th Cir. 2002) (listing the factors to consider when determining whether a series of acts constitutes a continuing violation). Without clarification as to which act(s) the Court believes may be able to constitute Plaintiffs' "stake in the ground" (*i.e.*, the non-discrete act within the statutory period that may justify the application of the continuing violation doctrine) under Title VII and/or § 1983, Defendants are unable to ascertain which, if any, of the otherwise time-barred allegations have been alleged to form part of the "series" of acts.

### Stay of Discovery and Extension of Time to File the Answer

Defendants respectfully request that the Court stay discovery and extend the deadline to file their Answer for a reasonable time after the Court rules on this Motion for Clarification. Defendants' Answer is currently due on February 28, 2022 and written discovery is to issue on the same date. Federal Rule of Civil Procedure 6(b)(1) permits a court to extend the deadline to file an answer "for good cause," provided the extension is made prior to the expiration of the filing deadline. *Gillo v. Gary Cmty. Sch. Corp.*, 2014 WL 3767680, at *2 (N.D. Ind. 2014); *Brown v. Johnson*, 2018 WL 4100529, at *5 (E.D. Wis. 2018) (granting defendants an extension to file answer "a reasonable time after" the court ruled on their motion for reconsideration). Good cause exists in this case because Defendants are unable to fully respond to Plaintiffs' First Amended Complaint until the Court clarifies its ruling on the Defendants' Second Motion to Dismiss.

Similarly, courts have broad discretion to stay discovery. *See Gekas v. Vasiliades*, 2012 WL 5948679, at *1 (C.D. Ill. 2012) (finding that a stay of discovery is appropriate until the court rules on the motion for judgment on the pleadings because the court's ruling "will clarify the issues for the parties and thereby allow the parties to conduct any future discovery more efficiently and with less cost"). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

counsel, and for litigants." *Ankcorn v. Kohl's Corp.*, 2017 WL 395707, at *2 (N.D. Ill. 2017) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "In deciding whether to enter such a stay, courts consider the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Id.* (citing *Genzyme Corp. v. Cobrek Pharm., Inc.*, 2011 WL 686807, at *1 (N.D. Ill. 2011)). Here, a stay of discovery pending further clarification from the Court will undoubtedly benefit the parities as it will clarify the issues in question and streamline the resolution of this litigation, while simultaneously reducing the burden of litigation on the parties and the court by delineating the scope of discovery. There is no reason to suggest that the Plaintiffs will be unduly prejudiced or tactically disadvantaged by such a stay.

**Conclusion:**

For the reasons stated herein, Defendants respectfully request that the Court clarify its January 21, 2022 ruling with respect to the four issues identified above. Defendants make this request because without such clarification they cannot adequately Answer Plaintiffs' First Amended Complaint nor can the parties engage in cost-effective discovery focused on Plaintiffs' claims as interpreted by the Court. Therefore, Defendants also respectfully request that the Court extend their deadline to answer and stay discovery until this Motion has been resolved.

    Respectfully submitted,

/s/ Lisa Parker
Lisa J. Parker (#6230008)
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
(312) 655-1501 (Facsimile)
lisa.parker@huschblackwell.com

9

> John W. Borkowski (#6320147)
> 1251 North Eddy Street, Suite 200
> South Bend, IN 46617
> (574) 239-7010
> (574) 287-3116 (Facsimile)
> john.borkowski@huschblackwell.com
>
> *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 22nd day of February 2022, a copy of the above and foregoing document was filed with the Clerk of Court using the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.