**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LIEUTENANT SHARON ROBINSON, | ) | |
| DIRECTOR WINONA HANNAH, | ) | |
| SERGEANT MARCELLA SAWYER, | ) | |
| TELECOMMUNICATIONS CARLA | ) | |
| KIMBER, SERGEANT VERONICA | ) | |
| HARRIS and OFFICER LAWANDA | ) | |
| BURRAS, | ) | Case No. 19-cv-00395 |
| | ) | |
| Plaintiffs, | ) | Honorable Martha Pacold |
| | ) | Honorable Magistrate Judge Harjani |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO STATE UNIVERSITY, | ) | |
| CAPTAIN JAMES MADDOX, individually | ) | |
| and in his official capacity, and LIETUENANT | ) | |
| CHARLES STEWARD, individually and in | ) | |
| his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Chicago State University, Captain James Maddox, and Lieutenant Charles

Steward (collectively "Defendants"), by and through counsel, state the following in answer to

Plaintiffs' First Amended Complaint.

## I.     INTRODUCTION

1.     This is an action for gender discrimination pursuant to 42 U.S.C. § 2000e *et seq.*
(Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1981.

**ANSWER**: Defendants admit that Plaintiffs allege they bring an action against

Defendants for alleged gender discrimination under Title VII of the Civil Rights Act of 1964.

Defendants deny all remaining allegations set forth in Paragraph 1 and specifically deny that

Plaintiffs have any valid cause of action against Defendants.

1

## II.    JURISDICTION

2.    Jurisdiction of this matter arises under Title VII of the Civil Rights Act of 1964 at 42 U.S.C. 2000e.

**ANSWER**: Paragraph 2 states legal conclusions to which no response is required. To the extent a response is deemed required, Defendants admit that this Court has jurisdiction over claims brought pursuant to Title VII of the Civil Rights Act of 1964. Defendants deny all remaining allegations set forth in Paragraph 2 and specifically deny that Plaintiffs have any valid cause of action against Defendants.

## III.    PARTIES

3.    Plaintiffs were at all relevant times female African-American officers employed by the Chicago State University and worked in Chicago, Illinois.

**ANSWER**: Defendants admit that Plaintiffs were police officers employed by Chicago State University, which is within the geographical boundaries of Chicago, Illinois. Defendants are without knowledge or information sufficient to form a belief as to the truth of Plaintiffs' remaining allegations in Paragraph 3 and therefore denies the same.

4.    Defendant Chicago State University is a state university in Chicago, Illinois that receives both state and federal funding.

**ANSWER**: Defendants admit that Defendant Chicago State University (the "University") is a state university in Chicago, Illinois, that receives both state and federal funding.

5.    Individual Defendants were at all relevant times employees of Chicago State University and worked in Chicago, Illinois.

**ANSWER**: Defendants admit that Defendants Captain James Maddox, and Lieutenant Charles Steward (collectively, the "Individual Defendants") were employees of the University and worked in Chicago, Illinois. Defendants state that the Individual Defendants are no longer employed by the University. Defendants deny all remaining allegations set forth in Paragraph 5.

## IV.    <u>FACTUAL ALLEGATIONS</u>

6.     Plaintiff Robinson has received outstanding or excellent performance evaluations since she began her employment as a police officer at Chicago State University in 1993. In 2003, she was promoted to the rank of Sergeant. In 2008, she was promoted to the rank of Lieutenant and became the first black female to ever make it to the rank of Lieutenant in the police department and within the state. Robinson served as the Clery Compliance Officer, Clery Training Officer, for the entire campus and was the liaison to CPD (emergency management), Traffic Coordinator, Pace Coordinator, and acted as the Chief of Police at various times from 2000-2007. Throughout her career, she has received Command School Training and was being prepped to become the Deputy Chief. She has further received many commendations and certificates.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 6.

7.     Plaintiff Hannah has received outstanding performance evaluations since the time she began her employment. Also, in 2017, she received a raise in her income and, in 2019, the University expanded her department and responsibility.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 7.

8.     Plaintiff Kimber has received outstanding or excellent performance evaluations since she began her employment in 1997. In 2012, she was promoted to the position of dispatcher with the Police Department. In 2013, she was promoted again to the LEADS Coordinator. She is currently the LEADS Coordinator and the Training Operator for the Police Department. Throughout her career, she has received many commendations and certificates.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 8.

9.     Lawanda Burras has received outstanding or excellent performance evaluations since she began her employment in 2001. In 2005, she joined the Police Department as a Security Officer; in 2008, she was promoted to the position of Police Officer; and [i]n 2016, she received her detective certification. She is currently the Juvenile Officer for the Police Department. Throughout her career, she has received many commendations and certificates.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 9.

10.     Marcella Sawyer has received outstanding or excellent performance evaluations since she started her employment at Chicago State University as an Extra Help Police Clerk in 1996. She then advanced to the position of Security Officer and became a fully certified dispatcher. In 2007, she was promoted to the position of Police Officer. In 2011, she became an investigator, then later was promoted to one of the first Detectives. In 2014, she became a Sergeant and then Sergeant Detective. Sawyer currently serves as the Union President. Throughout her career, she has received commendations and certificates.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 10.

11.     Veronica Harris has received outstanding or excellent performance evaluations since she started her employment at Chicago State University in 1992 as a Police officer. In 2000, she was promoted to the rank of Corporal, then, in 2002, she advanced to the rank of Sergeant. In addition to her role within the Police Department as a sergeant, Harris was the traffic coordinator, training coordinator (FTO), Pace coordinator, and ran the entire Internship Program. Up until retirement, in May 2019, she was the Union President. Throughout her career, she has received many commendations and certificates.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 11.

12.     From 2009 to the date of filing, Defendant Captain James Maddox was the supervisor of all Plaintiffs. Since he became their supervisor, Plaintiffs have experienced ongoing harassment from coworkers and supervisors based on their gender. The ongoing pattern of discrimination and harassment have been regular and routine and often occurs several times a week.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 12.

13.     In 2009, all of the administrative work, such as timekeeping and scheduling, was given only to the female officers. Defendants have never limited the male officers to only the administrative work within the Department.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 13.

14.     Plaintiffs are regularly referred to as being part of a "Girl's Club" by the male staff, particularly Defendant Maddox. Furthermore, Defendants disparage the male employees who get along with the female officers as being part of the "Girl's Club."

**ANSWER**: Defendants deny the allegations set forth in Paragraph 14.

15.     After defendants started negatively referring to Plaintiffs' as the "Girls Club," they stated they did not want any more females in leadership positions, nor did they want the department to hire more women.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 15.

16.     Additionally, Defendants Maddox and Steward started telling the male officers that the women were doing too much and outperforming the men. They further told the male officers that the women would soon be taking over positions of power.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 16.

17.     On or about June 2011, the Department started hiring new personnel. The Department hired several men and only one female. The Defendants quickly informed the newly hired male officers that the women had created a "Girls Club."

4

**ANSWER**: Defendants deny the allegations set forth in Paragraph 17.

18. The Defendants would reward the male officers for every good arrest. But if a female did the same, she would get no commendation.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 18.

19. Defendants have continuously excused the male officers' conduct, while the female officers received reprimands for the slightest incident. For example, a male officer was charged with Driving Under the Influence and received no discipline.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 19.

20. The Defendants have subjected the female officers to greater scrutiny of their job performance than their male counterparts.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 20.

21. Since Defendant Maddox began supervising Plaintiffs, the female officers have consistently been passed over for promotions.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 21.

22. Defendant Maddox has further allowed overtime for only the male officers but not for the female officers.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 22.

23. Defendants have demoted and altered the timecards of the Plaintiffs without knowledge or explanation. Whereas, male counterparts have received promotions or shift changes upon requests, and have never had their timecards changed without their knowledge or input.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 23.

24. Defendant Steward has further degraded and insulted all the women in the Department by calling them "whores" and "bitches." Defendant Maddox has condoned said behavior by allowing it to continue without incident.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 24.

25. The male officers were also forced by Defendants to write untrue statements against the female personnel.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 25.

5

26.     Defendant Maddox and Steward used the fictitious "Girls Club" in order to create a divide between the male and female officers.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 26.

27.     In 2014, Defendants Maddox and Steward started antagonizing the whole department to further the divide, including but not limited to verbal threats of demotion if the male officers if they followed orders from their female superiors.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 27.

28.     In 2003, Plaintiff Robinson was the first woman to be promoted to acting Lieutenant and the first and only female African-American Lieutenant in the department. Defendants Maddox and Steward would tell the other men in the department not to let any other women become their bosses.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 28.

29.     Additionally, Defendant Maddox allowed a male subordinate to take credit for Plaintiff Robinson's work (The Annual Security Report) while she was the Clery Compliance Officer.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 29.

30.     In 2010, Defendant Maddox threatened Sergeant Calvin Robbins with discipline if he did not falsely accuse Plaintiff Robinson of calling a subordinate officer a "bitch" while on the phone with a dispatcher.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 30.

31.     Also, Defendant Maddox told Plaintiff Robinson that she had to provide a progress report every day. No other officer has been expected to give a progress report.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 31.

32.     In 2011, Plaintiff Robinson was inexplicably forced to change her schedule from 9am-5pm to 2pm-10pm while a male counterpart was able to stay on his shift. When Plaintiff Robinson questioned the change, Defendants ignored her query.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 32.

33.     Plaintiff Robinson remained on the 2pm to 10pm shift for eight years but was still required to perform all the administrative duties, whereas Defendant Steward, when briefly put on the late shift and is the same rank as Plaintiff [R]obinson, was not expected to do any administrative work.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 33.

34.     In 2015, Defendant Maddox fought with the administration to remove Plaintiff Robinson as a Lieutenant, falsely stating that he did not need that position. Defendant Maddox informed the administration that he was okay with any decision to demote Plaintiff Robinson so long as himself and Defendant Steward remained the status quo. As a result, Plaintiff Robinson was demoted from Lieutenant to Sergeant with no reason given and lost approximately ten percent of her salary, over $10,000.00.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 34.

35.     On March 2017, Plaintiff Robinson was the highest-ranking Lieutenant in the department. Regardless, Defendant Maddox encouraged the male officers to challenge Plaintiff Robinson's seniority. Specifically, on or about February 2017, Defendant Maddox deliberately sent an erroneous seniority roster to the Union (Metropolitan Alliance of Police Chapter #297) demanding the removal of Plaintiff Robinson and Plaintiff Harris from their rightful line of seniority, which had been acknowledged for over 14 years.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 35.

36.     On or around May 2017, Plaintiff Robinson and Sergeant Mack resolved issues involving the scheduling of training troops via email. After addressing the problems together, Defendant Maddox sent Plaintiff Robinson a scathing and unnecessary email degrading her for questioning the male sergeant and accusing Plaintiff Robinson of creating a hostile work environment.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 36.

37.     In 2013, Defendant Maddox continuously told the male officers that Plaintiff Robinson was the leader of the "Girls Club."

**ANSWER**: Defendants deny the allegations set forth in Paragraph 37.

38.     Starting around March 2014, Defendants tried to pit Plaintiff Robinson and Plaintiff Hannah against one another because Plaintiff Robinson was Plaintiff Hannah's immediate supervisor. For example, Defendant Steward would tell Plaintiff Hannah not to trust Plaintiff Robinson and that Plaintiff Robinson was out of control. At one point, the Defendants even told Plaintiff Hannah that Plaintiff Robinson had called Plaintiff Hannah a "bitch." Defendant Maddox encouraged and condoned this behavior.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 38.

39.     Plaintiff Robinson, the only female lieutenant, was left out of all the meetings unless it required her typing up paperwork.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 39.

40.     Additionally, the individual Defendants consistently referred to Plaintiff Robinson as a "glorified secretary."

**ANSWER**: Defendants deny the allegations set forth in Paragraph 40.

41.     Defendant Maddox also ordered the male sergeants (Norey & Robins) not to inform Plaintiff Robinson of the incidents that had taken place on the campus or their shift because she was a "glorified secretary." Norey followed the order and informed his troops not to inform Plaintiff Robinson of incidents. Sergeant Pamelee Robinson was the only female who followed this order.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 41.

42.     On or about April 5, 2018, Defendant Maddox had Plaintiff Robinson formally interrogated about an incident with Sergeant Norey, where he pulled his duty weapon on Keith Taylor (one of his subordinates) while conducting an unauthorized knife training course. Although Plaintiff Robinson was not involved in the complaints, nor the incident, Defendant Maddox falsely informed University Counsel that Plaintiff Robinson had police officers John Batson, Keith Taylor, and Wendell Mack make up a story to force Sergeant Norey to retire.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 42.

43.     Defendants Maddox and Steward would coerce the male officers into making false statements about the female officers. Defendants would further promise to protect the male officers and promote them if they lied for the Defendants. For example, Defendants Maddox and Steward told Officer Williams to falsely report that Plaintiff Robinson was the one who caused the gender divide within the department.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 43.

44.     On or about February 16, 2018, Plaintiff Hannah was suspended for two weeks without pay following a verbal altercation that occurred over email. In a more extreme incident, two male officers engaged in a physical fight while armed. Defendants took no disciplinary action against either of them.

**ANSWER**: Defendants admit that Plaintiff Hannah was suspended for two weeks in February 2018 after sending another University employee an email from her University email account in which she threatened the employee with physical harm. Defendants deny the remaining allegations set forth in Paragraph 44.

45.     On or about April 2018, Plaintiff Hannah was placed under investigation and suspended for reportedly failing to purchase a parking permit even though she had purchased the permits and provided the paperwork to prove payment. Plaintiff Hannah was allowed to return to

work on May 29, 2018, but as of the date of this filing is still under investigation. Around the same time, two male officers were also accused of not purchasing parking permits. Defendants did not reprimand or put the male officers under investigation. Instead, parking passes were simply bought for them, and no issue was made.

**ANSWER**: Defendants admit Plaintiff Hannah was suspended on or about April 2018 after

an investigation revealed she was in violation of the University's parking policies. Defendants

deny the remaining allegations set forth in Paragraph 45.

46.     On or about April 2018, Plaintiffs Harris and Robinson were found to have hanging parking placards, which they paid for, instead of the standard decals that the University had switched to in 2016. They were placed under investigation by Captain Maddox for failing to pay for parking, even though records showed they paid. Through the course of the investigation, Defendants accused Plaintiff Hannah of giving Harris and Robinson the placards even though she did not have access to the phased out placards. As a result of this unfounded investigation, Hannah was threatened with termination and forced to hire an attorney to defend her at a hearing.

**ANSWER**: Defendants admit that Plaintiff Hannah and Plaintiff Robinson were

investigated on or about April 2018 for failure to purchase a one-year parking decal or sticker, as

required by the University's parking policies. Defendants deny the remaining allegations set forth

in Paragraph 46.

47.     In June 2014, a Sergeant's position became available, and there were only two candidates, Plaintiff Sawyer and Anthony Goodman. During that time, Defendants told all the male officers that if Sawyer became Sergeant, they would have another "Sharon" (Plaintiff Robinson) and they do not need any more females telling the male officers what to do.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 47.

48.     Plaintiff Sawyer was promoted and given the title and responsibilities of Sergeant Detective in June 2014. Defendant Maddox was upset with the promotion, and in retaliation, he had the locksmith, Dan Chopp, change the locks on the investigator's office and issued new keys to all the male investigators, but not to Plaintiff Sawyer. Two of the officers were issued keys while they were off-campus at Detective's training and Detective Jones was told by Defendant Maddox not to tell Plaintiff Sawyer about the lock change. Defendant Maddox never issued Plaintiff a key or told her of the lock change even though he saw her every day.

**ANSWER**: Defendants admit that Plaintiff Sawyer was promoted to Sergeant in June

2014. Defendants currently lack knowledge or information sufficient to form a belief about the

truth of the remaining allegations in this paragraph and therefore deny the remaining allegations

set forth in Paragraph 48.

49.    In October 2015, Defendant Maddox called Plaintiff Sawyer to his office and falsely accused her of failing to inspect and report the damage to a vehicle. Plaintiff Sawyer explained that she had been investigating the damage before being called to Defendant Maddox's office.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 49.

50.    Defendant Maddox then showed Plaintiff Sawyer a stack of old investigative reports and asked why she had not signed them. Plaintiff Sawyer explained that Defendant Steward was supposed to sign them after Plaintiff Sawyer reviewed them. Defendant Maddox told Chief Patricia Walsh that Plaintiff Sawyer was responsible for signing the reports and wrongfully accused her of not doing her job.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 50.

51.    As a result of the previous paragraphs, Defendant Maddox attempted to demote Plaintiff Sawyer. On or about through October 2015, Defendant Maddox was successful in his request and had Plaintiff Sawyer removed from the position of Sergeant Detective without documentation and had her stipend taken away. She was promoted back to Sergeant again in October 15, 2017.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 51.

52.    On or about July 31, 2017, Plaintiff Sawyer requested a copy of a homicide case file to prepare for court. Defendant Maddox never responded to Plaintiff's Sawyer's email. Seven days later, Defendant Maddox gave an incomplete copy of the case file to Sergeant Wilbert Norey. Plaintiff Sawyer sent a second email on August 12, 2017, to Defendant Maddox reminding him there was a loss of life. Defendant Maddox released the complete record to Sergeant Norey on August 14, 2017, on Plaintiff Sawyer's day off and one day before the case went to trial. Defendant Maddox never sent the documentation to Plaintiff Sawyer.

**ANSWER**: Defendants currently lack knowledge or information sufficient to admit or deny the allegations in Paragraph 52, and therefore deny all allegations set forth in Paragraph 52.

53.    On or about May 21, 2013, Plaintiff Sawyer called an applicant for the investigation unit who became very rude to her on the phone. After the call, Plaintiff Sawyer informed Chief Ronnie Watson, Defendant Steward, and Defendant Maddox of the applicant's attitude. Based on this conversation, Chief Watson rescinded the applicant's offer of employment. Following this conversation, Defendant Maddox called a meeting with the Investigators which included Plaintiff Sawyer, Michael Jones, Eugene Heffner & Anthony Goodman. As soon as Plaintiff Sawyer entered the meeting, she was under verbal attack by Defendant Maddox stating that she had

mishandled the call and alleging she "sabotaged" the interview because she was jealous of another male officer. Defendant Maddox became so physically aggressive during the meeting that Investigator Jones had to stand between Plaintiff Sawyer and Defendant Maddox.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 53.

54.     On or about April 6, 2014, Plaintiff Sawyer passed the Sergeant's exam. Defendant Maddox halted her promotion by constant daily attacks, lies, and innuendos. For example, he falsely accused Plaintiff Sawyer of intentionally throwing a case by not collecting chemical evidence which required a HazMat team to remove. The chemical was photographed but not transported for safety reasons. Defendant Maddox made the unfounded accusation that Plaintiff Sawyer was related to the offender. Plaintiff Sawyer was questioned and later directed to write a To-From document confirming that she not associated with the offender. Because of this incident, Plaintiff Sawyer was not considered for Sergeant.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 54.

55.     On or about October 2015 while removing her belongings from the Investigator's Office, Plaintiff Sawyer noticed a picture of herself hanging on the wall. In this picture, there are pins stuck in Plaintiff Sawyer's eyes. This picture remained hanging in a shared area, and every time Defendant Maddox walked past it, he would either do nothing or laugh. As of the date of this filing, the picture is still hanging inside the office.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 55.

56.     Defendant Maddox told Chief Walsh and others that Plaintiff Sawyer sabotaged the investigator's office in order to remove her from that office. Various male officers said it was because Maddox did not want the men taking orders from a woman.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 56.

57.     On or about April 2014, Defendants told Officer Anthony Goodman to file an unfounded complaint against Plaintiff Sawyer with the EEOC for age and sex discrimination, so that it would put pressure on Chief Walsh to promote Officer Goodman and not Plaintiff Sawyer. This incident stalled Plaintiff Sawyer's promotion process.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 57.

58.     On or about September 2017, Plaintiff Sawyer was told she needed to "dummy down" because she was "shining too bright" and "overshadowing" the men in the department.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 58.

59.     Plaintiff Kimber was written up and required to pay for using a fax machine, while Sergeant Mack had no action taken against him for using the fax machine.

**ANSWER**: Defendants currently lack knowledge or information sufficient to admit or deny the allegations in Paragraph 59, and therefore deny all allegations set forth in Paragraph 59.

60.     On or about May 14, 2018, Defendant Maddox allowed a male officer to take overtime on the third watch while simultaneously revoking the overtime previously offered to Plaintiff Kimber. To further avoid giving Plaintiff Kimber overtime, Defendants hired an untrained male dispatcher.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 60.

61.     Beginning in 2017, Plaintiffs Kimber and Burras have not been allowed to occupy the same space in the dispatcher's office, even though they both require access to the computer for performing various tasks. The male officers' association with each other and their presence in the dispatcher's office has never been monitored or regulated.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 61.

62.     On or about November 2016, Plaintiff Harris submitted Plaintiff Kimber's request for time off during the holidays. Maddox denied the time and falsely told Plaintiff Kimber that he never received the paperwork from Plaintiff Harris.

**ANSWER**: Defendants admit that, on or about December 2016, Plaintiff Harris emailed Defendant Maddox about her requested vacation leave and Defendant Maddox responded that he never received the request.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 62, and therefore deny them.

63.     On or about March 2018, Plaintiff Kimber received permission to use her emergency time to deal with a personal emergency. However, Maddox later said that she was not allowed to use emergency time and instead put her leave down as sick time.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 63, and therefore deny them.

64.     On or about August 24, 2016, Defendant Maddox took Plaintiff Kimber's and badge during a routine audit to examine her badge further. After the audit's conclusion, Maddox did not return her badge for at least a year. It was not returned to her until she went to his superior, who ordered him to do so.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 64.

65.     On or about February 2017, Defendant Maddox deliberately sent an erroneous seniority roster to the Union (Metropolitan Alliance of Police Chapter #297) demanding the removal of Plaintiff Robinson and Plaintiff Harris from their rightful line of seniority, which had been acknowledged for over 14 years.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 65.

66.     On or about November 2016, Plaintiff Harris submitted Plaintiff Kimber's request for time off during the holidays. Maddox denied the time and falsely told Plaintiff Kimber that he never received the paperwork from Plaintiff Harris.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations set forth in Paragraph 66, and therefore deny them.

67.     On or about March 2018, Plaintiff Harris provided written notification, rather than a verbal notification, after a medical emergency, as was the practice at the time. She received a verbal reprimand, which went in her file, for failing to call. However, around the same time, male officer Sgt. Calvin Robbins committed a similar offense and did not receive a reprimand, but was informed of the change in procedure.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations set forth in Paragraph 67, and therefore deny them.

68.     Defendant Steward told Plaintiff Harris that Defendant Maddox did not like her because she was not a "yes woman" and asked too many questions. Defendant Maddox was very aggressive towards Plaintiff Harris when confronted.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 68.

69.     On or about March 27, 2015, Defendant Steward told Plaintiff Harris that the administration implemented new stricter rules that were contrary to the union contract and she was expected to follow the new rules. None of the male officers followed these new rules and were never disciplined.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 69.

70.     Defendant Steward further filed a baseless reprimand against Plaintiff Harris for leaving officers outside instead of bringing everyone inside for the event.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations set forth in Paragraph 70, and therefore deny them.

71.     On or about May 6, 2015, Plaintiff Harris was the on-duty supervisor. She took the complaint of a woman who stated that a male officer unnecessarily ejected pepper spray into the grill of her vehicle, forcing her to exit the car. Plaintiff Harris then turned the complaint into Defendants Maddox and Steward. Upon receipt of the complaint, Defendant Steward did not reprimand the male officer. Instead, he gave Plaintiff Harris a verbal reprimand, and never disciplined the male officer.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 71.

72.     On or about December 2016, Defendant Maddox changed Plaintiff Harris's timecard without her knowledge. When Plaintiff Harris confronted Defendant Maddox, Defendant Maddox stated that he had every right to change the time card. Defendant Maddox falsely alleged that Plaintiff Harris threatened him and tried to attack him during this exchange. These false allegations resulted in plaintiff Harris receiving a 5-day suspension.

**ANSWER**: Defendants admit that Plaintiff Harris and Plaintiff Robinson entered Defendant Maddox's office on or about December 2016 and Plaintiff Harris initiated a confrontation with Defendant Maddox about perceived changes to her timecards. Defendants further admit that Defendant Maddox submitted a written recommendation to the Chief of Police that Plaintiff Harris be suspended for her insubordinate behavior. Defendants deny the remaining allegations set forth in Paragraph 72.

73.     On or about November 2016, Plaintiff Harris sent an email to Defendant Maddox that Officer Michael Jones requested to go to midnights. Defendant Maddox stated he never received said notification. Thus, Michael Jones never got reassigned. Defendant Maddox attempted to get Jones to write a grievance about her for not being reassigned, but he refused.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 73.

74.     On or about January 2017, Maddox denied Plaintiff Harris's vacation stating that he never received her request. Plaintiff Harris sent in her vacation request with her entire shift. Everyone else's vacation was approved.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 74, and therefore deny them.

75.     Starting in 2017, Plaintiffs Kimber and Burras have not been allowed to occupy the same space in the dispatcher's office, even though Burras would reasonably need to access that room. The male officers' association with each other and their presence in the dispatcher's office has never been monitored or regulated.

14

**ANSWER**: Defendants deny the allegations set forth in Paragraph 75.

76.     Sergeant Wendell Mack struck a pedestrian while on patrol and no action was taken against him. Whereas, Defendants reprimanded Plaintiff Burras after she struck a fixed object while on patrol.

**ANSWER**: Defendants admit Plaintiff Burras struck a fixed object while driving a patrol vehicle on campus.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 76, and therefore deny them.

77.     Officer Peter Scalone destroyed at least four vehicles, but no action was taken against him. Whereas, Plaintiff Burras was given a written reprimand after one accident.

**ANSWER**: Defendants admit that Plaintiff Burras received a written reprimand after she struck a fixed object with a patrol car.  Defendants deny the remaining allegations set forth in Paragraph 77.

78.     Throughout 2018, there were at least four separate accidents that resulted in damage to state property. Each one of these accidents involved male officers, and none of the officers were reprimanded, investigated, or suffered any consequences for the accidents or damage caused. Defendants brought on a full investigation and disciplined Plaintiff Burras when she was involved in a similar accident.

**ANSWER**: Defendants admit that Plaintiff Burras received a written reprimand after she struck a fixed object with a patrol car.  Defendants deny the remaining allegations set forth in Paragraph 78.

79.     Defendants have continuously monitored Plaintiff Burras regarding whom she eats with, talks with, and when she is allowed in the station, while Defendants have never questioned her male cohorts on the same topics.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 79.

80.     In 2014, Defendants ordered Plaintiff Robinson to reprimand Plaintiff Burras, without investigation, upon the false belief that she failed to appear in court. After Plaintiff Robinson investigated the claim, she found that Officer David Harris was the officer who had failed to appear in court. She told the Defendants, but Defendants ordered Plaintiff Robinson to do nothing against the male officer. This incident resulted in a lawsuit.

15

**ANSWER**: Defendants deny the allegations set forth in Paragraph 80.

81.    In 2009, Plaintiff Burras was the only female officer on her shift. She was the arresting officer in a robbery case. Instead of rewarding her, Defendant Maddox gave commendations to two male officers.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 81.

82.    In 2016, Plaintiff Burras was sent to detective training two weeks after training had already begun. Plaintiff Burras was denied to test and graduate while a male counterpart, Peter Scalone, who missed the same amount of time (or more) was allowed to test and graduate the program.

**ANSWER**: Defendants admit that Plaintiff Burras was given the opportunity to attend detective training with the Chicago Police Department in 2016, but Plaintiff Burras failed to attend the first two weeks of the training.  Defendants further admit that, under the Chicago Police Department's training policies, Plaintiff Burras could not receive the training certificate because of the amount of training she missed.  Defendants deny the remaining allegations set forth in Paragraph 82.

83.    In 2017, Plaintiff Burras completed detective training for the second time, but she did not get the option to shadow the detectives at CSU. However, Peter Scalone, a male officer, received the position. Mr. Scalone initially did not want to take the position because it required the hours of 9:00am to 5:00pm. Because the Defendants did not want any females in the Detective Division, Plaintiff Burras was never given the opportunity even after Mr. Scalone initially refused the position. As of the date of this filing, no females are within the Detectives Division even though 85% of the campus is female.

**ANSWER**: Defendants admit that Plaintiff Burras received a second opportunity to complete detective school in 2017.  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 83, and therefore deny them.

84.    In 2014, Defendants ordered Plaintiff Robinson to reprimand Plaintiff Burras without investigation upon the belief that she failed to appear in court for an automobile accident. After Plaintiff Robinson investigated the claim, she found that Officer David Harris was the officer who failed to appear in court. She told the Defendants, but Defendants ordered Plaintiff Robinson to do nothing against the male officer because he had a good reason for failing to appear in court.

16

This incident resulted in a lawsuit in which the University/Central Management Service settled for $30,000.00.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 84.

85.    On or about October 24, 2018, Defendant Maddox refused to allow Plaintiff Burras the opportunity to use one of the patrol vehicles to attend her scheduled training class, knowing that she did not have a personal car. None of the male officers were ever questioned or denied the use of a patrol vehicle for training.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 85.

86.    Plaintiffs have filed multiple grievances and spoken to the Union, EEOC, and Human Resources on numerous occasions about the discrimination committed by and condoned by Defendant Maddox and Defendant Steward, including but not limited to:

a.    Plaintiff Robinson had to file a grievance against Defendant Maddox for refusing to offer her overtime after providing it to the male officers in the department.

b.    Plaintiffs Harris and Robinson were forced to bring the union in to stop the Defendant from moving forward on removing and altering the seniority on the roster.

c.    Also, Plaintiff Harris also met with Human Resources Director, Rene Mitchell, in February 2016 to discuss the sex discrimination within the Department.

d.    Plaintiff Harris also met with Patrick Cage, General Counsel for the University. He stated that he would sit down with the Chief and work on the changes. However, that meeting never took place.

e.    On or about March 1, 2017, Defendant Maddox received a "Cease and Desist" letter from plaintiffs Robinson and Harris.

f.    On March 8, 2017, an official complaint was filed against Defendant Maddox with the University EEOC Office. No action was taken.

g.    On or about May 2017, a complaint was filed with the University's EEOC Office because Maddox had taken away Plaintiffs' overtime. Again, no action was taken.

h.    In March 2018, Plaintiff Harris filed an additional discrimination/harassment complaint with the EEOC Office against Defendant Maddox, requesting that his attempts to intimidate her cease.

i.    In May 2018, Plaintiff Hannah complained to Lindsey Hamilton, the Human Resources Director, about Defendants' harassment and attempts to terminate her. Hamilton removed Defendant Maddox from overseeing and supervising the Parking Department and Plaintiff Hannah.

**ANSWER**: Defendants admit that Plaintiff Robinson filed a grievance against Defendant

Maddox on or about February 4, 2017, in relation to her timecard, which was denied. Defendants

further admit that Plaintiffs Robinson and Harris sent Maddox a "Cease and Desist" letter on or

about March 1, 2017. Defendants lack knowledge or information sufficient to form a belief as to

the truth or falsity of the remaining allegations in Paragraph 86, and therefore deny them.

87.    Because of Defendant's behavior, on August 22, 2018, the new Chief of Police told Plaintiff Robinson to report directly to him rather than to Defendant Captain Maddox.

**ANSWER**: Defendants are without knowledge or information sufficient to form a belief

as to truth of the allegations set forth in Paragraph 87 and therefore deny the same.

88.    During and after the various complaints filed against him and Defendant Steward, Defendant Maddox began taking measures designed to retaliate against Plaintiffs.

   a.  On March 8, 2017, Defendant Maddox retaliated by sending an email to the entire university administrative staff with false accusations that Plaintiffs Robinson and Harris harassed and created a hostile work environment. Plaintiffs Robinson and Harris were called bullies, unprofessional as well as inappropriate.

   b.  Also, on or about February 21, 2018, Defendant Maddox sent an email containing harsh, embarrassing, belittling, intimidating, and false statements directed at Plaintiff Sawyer. He copied Plaintiffs Robinson and Harris as well as Defendant Steward, Sergeant Pamela Robinson, Sergeant Calvin Robins, and Sergeant Wendell Mack. This email was meant to damage Plaintiff's Sawyer reputation amongst her superiors and coworkers. It was also done to prevent Plaintiff Sawyer from becoming the new Union President.

   c.  Defendant further began intentionally precluding Plaintiffs from vital training and meetings, including, but not limited to:

      i.   Defendant Maddox removed Plaintiff Robinson, the only female lieutenant, from all department training and exercises unless it involved her typing notes, including but not limited to emergency and daily operations. As such, she was not informed of the daily operations of the department.

      ii.  Defendant Maddox removed Plaintiff Robinson from the notification list, while the new Chief was put on it within two days of his employment. Because of her removal from the notification list, Plaintiff Robinson was not informed of charges filed or necessary notifications for administration.

      iii. On or about May 9, 2018, Defendants Maddox and Steward went to "Procedure, Justice, and Police" training, but none of the female officers were not allowed to attend.

      iv.  On or about June 2018, an employee training was held on AR-15 guns. No open call was presented, and only the male officers were invited to the training.

      v.   Defendant Maddox removed Plaintiff Hannah, who is in charge of all parking-related matters, from all parking-related meetings without provocation.

**ANSWER**: Defendants admit that Defendant Maddox sent an email to Plaintiff Robinson, Plaintiff Harris, Patricia Walsh, Robin Hawkins, Patrick Cage, Ronald Cicinelli, and Renee Maddox on or about March 8, 2017.  Defendants deny the remaining allegations set forth in Paragraph 88, including subparagraphs (a) through (c)(v), and further deny that Defendant Maddox engaged in any retaliation against Plaintiffs.

89.     On or about September 10, 2018, Plaintiffs filed charges of gender discrimination with the Equal Opportunity Employment Commission (EEOC), Charge Nos. 440-2018-05816 (Harris), 440-2018-05815 (Kimber), 440-2018-05818 (Burras), 440-2018-05819 (Sawyer), 440-2018-05817 (Robinson) and 440-2018-08042 (Hannah). All allegations contained in these charges are hereby incorporated in this Complaint by reference. Plaintiffs thereafter requested and received Notice of Right to Sue by the EEOC dated October 26, 2018. This lawsuit has been commenced within 90 days of receipt of the Notice of Right to Sue.

**ANSWER**: Paragraph 89 states legal conclusions to which no response is required.  To the extent a response is deemed required, Defendants admit that Plaintiffs filed Charges of Discrimination, EEOC Charge Nos. 440-2018-05816 (Harris), 440-2018-05815 (Kimber), 440-2018-05818 (Burras), 440-2018-05819 (Sawyer), 440-2018-05817 (Robinson) and 440-2018-08042 (Hannah), against Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging gender discrimination, and filed this Complaint within 90 days of the EEOC issuing a Notice of Right to Sue.  Defendants deny all remaining allegations set forth in Paragraph 89.

## V.     LEGAL ALLEGATIONS

### COUNT I – GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.*
### (Against the University)

90.     Plaintiffs incorporate herein all previous paragraphs of this complaint.

**ANSWER**: Defendants incorporate and adopt by reference herein all preceding paragraphs of their Answer.

91.     Title VII, 42 U.S.C. §2000e-2(a) provides "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**ANSWER**: The allegations in Paragraph 91 are legal conclusions to which no response is required.  To the extent a response is deemed required, Defendants deny that they engaged in any conduct with respect to Plaintiffs that gives rise to a cause of action under the law and deny any remaining allegations in Paragraph 91.

92.     Plaintiffs have been the victims of unlawful discriminatory conduct in the workplace. Plaintiffs were unlawfully subject to disparate treatment and suffered adverse employment actions by [D]efendants on the basis of sex. These employment violations were unlawful in violation of Title VII, 42 U.S.C. §2000e-2(a).

**ANSWER**: The allegations in Paragraph 92 are legal conclusions to which no response is required.  To the extent a response is deemed required, Defendants deny the allegations set forth in Paragraph 92.

93.     Specifically, all Plaintiffs, individually and as a group, have been subjected to duties, policies, and standards that are different and more stringent than similarly situated male officers.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 93.

94.     In addition, Plaintiffs, individually and as a group, have been reprimanded for behavior that when performed by similarly situated male employees brought on no discipline and Defendants have given commendations to male employees for the work that Plaintiffs have done.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 94.

95.     Further, Plaintiffs, individually and as a group, have had their position with the University undermined and sabotaged by Defendants.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 95.

96.     Plaintiffs have been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as a direct and proximate result of respondent's violations of their civil rights alleged herein. Plaintiffs are reasonably certain to continue to suffer these damages in the future. Plaintiffs are entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. §1981(a), including actual damages, compensatory damages, punitive damages, and attorneys' fees.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 96 and further deny that Plaintiffs are entitled to any relief whatsoever, whether in law or in equity.

WHEREFORE, Plaintiffs seek compensation as laid out below.
  A.    All wages and benefits Plaintiffs would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;
  B.    Compensatory damages in an amount to be determined at trial;
  C.    A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;
  D.    A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000 *et seq.*;
  E.    The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;
  F.    Punitive damages as allowed by law against Defendants;
  G.    An award of reasonable attorneys' fees, costs, and litigation expenses; and
  H.    Such other relief as the Court may deem just or equitable.

**ANSWER**: Defendants deny the allegations set forth in Plaintiffs' WHEREFORE paragraph, including subparagraphs (A) through (H), and further deny that Plaintiffs are entitled to any relief whatsoever, whether in law or in equity.

## COUNT II – UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-3(a)
### (Against the University)

97.     Plaintiffs incorporate herein all previous paragraphs of this complaint.

**ANSWER**: Defendants incorporate and adopt by reference herein all preceding paragraphs of their Answer.

98.    42 U.S.C. 42 2000e-3(a) provides "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

**ANSWER**: The allegations in Paragraph 98 are legal conclusions to which no response is required.  To the extent a response is deemed required, Defendants deny the allegations set forth in Paragraph 98.

99.    Defendants committed unlawful employment practices when they retaliated against Plaintiffs for their efforts to oppose practices reasonably believed to be prohibited by Title VII, in violation of 42 USC 2000e-3(a).

**ANSWER**: Defendants deny the allegations set forth in Paragraph 99.

100.    Specifically, Plaintiffs, individually and as a group, have made complaints to Human Resources, the Union, and EEOC about the sex discrimination they incur on a regular basis.

**ANSWER**: Defendants admit that, on or about September 10, 2018, Plaintiffs filed charges of gender discrimination with the Equal Opportunity Employment Commission (EEOC), Charge Nos. 440-2018-05816 (Harris), 440-2018-05815 (Kimber), 440-2018-05818 (Burras), 440-2018-05819 (Sawyer), 440-2018-05817 (Robinson) and 440-2018-08042 (Hannah).  Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 100, and therefore deny them.

101.    In addition, Plaintiffs have sent Defendant Maddox a "cease and desist" letter.

**ANSWER**: Defendants admit that Plaintiffs Robinson and Harris sent Maddox a "Cease and Desist" letter on or about March 1, 2017.  Defendants deny the remaining allegations set forth in Paragraph 101.

102.    Shortly after these complaints, Defendant began retaliating against Plaintiffs by precluding the female officers from necessary trainings and meetings and sending emails to the entire university administrative staff with false accusations about Plaintiffs.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 102.

103.    Plaintiffs have been made to suffer mental anguish and emotional distress, loss of employment and future employment opportunities, and loss of wages and benefits as a direct and proximate result of respondent's violations of their civil rights alleged herein. Plaintiffs are reasonably certain to continue to suffer these damages in the future. Plaintiffs are entitled to the rights and remedies at law provided by Title VII and 42 U.S.C. §1981(a), including actual damages, compensatory damages, punitive damages, and attorneys' fees.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 103 and further deny

that Plaintiffs are entitled to any relief whatsoever, whether in law or in equity.

WHEREFORE, Plaintiffs seek the following relief as to Count II of the Complaint:
   A.    All wages and benefits Plaintiffs would have received but for the discrimination, including but not limited to back pay, front pay, future pecuniary losses, and prejudgment interest;
   B.    Compensatory damages in an amount to be determined at trial;
   C.    A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;
   D.    A permanent injunction requiring that the Defendants adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. § 2000 et seq.;
   E.    The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;
   F.    Punitive damages as allowed by law against Defendants;
   G.    An award of reasonable attorneys' fees, costs, and litigation expenses; and
   H.    Such other relief as the Court may deem just or equitable.

**ANSWER**: Defendants deny the allegations set forth in Plaintiffs' WHEREFORE

paragraph, including subparagraphs (A) through (H), and further deny that Plaintiffs are entitled

to any relief whatsoever, whether in law or in equity.

## COUNT III – CONSPIRACY
### (Against the Individual Defendants)

104.    Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

**ANSWER**: Defendants incorporate and adopt by reference herein all preceding paragraphs of their Answer.

105.    As described more fully above, the individual Defendants reached an agreement amongst themselves to discriminate against Plaintiffs based upon their gender, and to thereby deprive Plaintiffs of their Constitutional rights, all as described more fully throughout this Complaint.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 105.

106.    In this manner, Defendants Maddox and Steward, acting in concert with each other, have conspired by concerted action to accomplish an unlawful purpose by unlawful means.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 106.

107.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity, including but not limited to, encouraging the male officers to refer to the female officers as "The Girls' Club," encouraging male officers to ignore the authority of Plaintiff Robinson and other Plaintiffs, forcing the male officers to make false allegations against the female officers, and allowing the male officers to commit infractions without discipline while simultaneously reprimanding the female officers for similar behavior.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 107.

108.    As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs' rights have been violated repeatedly, and they have suffered significant damages, severe emotional distress and anguish, as is more fully alleged above.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 108.

109.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff and others.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 109.

110.    As a proximate result of the above detailed actions of Defendants, Plaintiffs were injured monetarily and emotionally, including mental suffering, anguish, humiliation, and fear.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 110.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands judgment against the Defendants for compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**ANSWER**: Defendants deny the allegations set forth in Plaintiffs' WHEREFORE paragraph and further deny that Plaintiffs are entitled to any relief whatsoever, whether in law or in equity.

## COUNT IV – EQUAL PROTECTION DEPRIVATION
## BASED ON GENDER IN VIOLATION OF 42 U.S.C. § 1983
### (Against the Individual Defendants)

111.    Plaintiffs reallege and incorporates by reference all previous paragraphs.

**ANSWER**: Defendants incorporate and adopt by reference herein all preceding paragraphs of their Answer.

112.    Defendants subjected all Plaintiffs to harassment and discrimination in the terms and conditions of their employment based on their gender by including but not limited to the following: demoting and/or failing to promote Plaintiffs; commending male officers over Plaintiffs; [d]isciplining female officers over of male officers; changing Plaintiffs' schedules without notice; demanding male officers to proffer false statements against Plaintiffs; and humiliating Plaintiffs through defacing pictures of Plaintiffs and sending damages emails to Plaintiffs' superiors.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 112.

113.    Defendants' conduct against Plaintiffs constitutes unlawful discrimination and harassment based on gender and is part of a continuing pattern and practice of discrimination against females based on their gender.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 113.

114.    The conduct alleged herein constitutes a pattern, custom, and practice of discrimination against women based on their gender.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 114.

115.    All of Defendants' employment practices as alleged herein are undertaken with discriminatory intent.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 115.

116.    This conduct as alleged herein constitutes official policies or customs of the Chicago State University Security Department, which violate the Fourteenth Amendment of the United States Constitution as secured by 42 U.S.C. § 1983.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 116.

117.    Defendants Maddox and Steward, along with Chicago State University, are responsible for the acts of Security Department supervisors and command staff, who were acting within the scope of their employment and pursuant to a policy, custom, and/or pattern of gender discrimination and in violation of individual rights of equal protection under the Fourteenth Amendment to the Constitution of the United States.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 117.

118.    Defendants Maddox and Steward either participated in the discriminatory treatment, knew or should have known of the discriminatory conduct, failed to take any effective remedial action to remedy and/or prevent the discriminatory treatment, and turned a blind eye to the discriminatory treatment and harassment against Plaintiffs and other women.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 118.

119.    Defendant have acted under color of state law at all material times hereto.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 119.

120.    Defendants engaged in a continuing violation under 42 U.S.C. § 1983.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 120.

121.    The actions of Defendants have caused Plaintiffs great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 121.

122.    Defendants intentionally discriminated against Plaintiffs with malice or reckless indifference to Plaintiffs' civil rights, thereby entitling Plaintiffs to punitive damages against the individual Defendants.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 122.

123.    Plaintiff requests that the Court order systemic injunctive relief to address the unlawful conduct complained of herein.

**ANSWER**: Defendants deny the allegations set forth in Paragraph 123, including

Plaintiffs' allegation of unlawful conduct and request for systemic injunctive relief, and further

deny that Plaintiffs are entitled to any relief whatsoever, whether in law or in equity.

WHEREFORE, Plaintiffs seek the following relief as to Count IV of the Complaint:

A.  All wages and benefits Plaintiffs would have received but for the discrimination, including but not limited to back pay, front pay, prejudgment interest, and restoration of job assignments;

B.  Compensatory damages in an amount to be determined at trial to compensate Plaintiff for the humiliation, anguish, and emotional distress caused by Defendants' conduct;

C.  A permanent injunction enjoining Defendants from engaging in the discriminatory practices complained of herein;

D.  A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment based on gender;

E.  A declaratory judgment that Defendants' actions violate 42 U.S.C. § 1983;

F.  The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

G.  Punitive damages as allowed by law as against all individual Defendants;

H.  An award of reasonable attorneys' fees, costs, and litigation expenses; and

I.  Such other relief as the Court may deem just or equitable.

**ANSWER**: Defendants deny the allegations set forth in Plaintiffs' WHEREFORE paragraph, including subparagraphs (A) through (I), and further deny that Plaintiffs are entitled to any relief whatsoever, whether in law or in equity.

## CONCLUSION

WHEREFORE, as a result of Defendants intentionally discriminated against Plaintiffs with malice or reckless indifference to Plaintiffs' civil rights, Plaintiffs Sharon Robinson, Director Winona Hannah, Sergeant Marcella Sawyer, Telecommunications Carla Kimber, Sergeant Veronica Harris, and Officer Lawanda Burras suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages. Therefore, Plaintiffs request punitive and compensatory damages in an amount deemed at trial to be just, fair, and appropriate.

**ANSWER**: Defendants deny the allegations set forth in Plaintiffs' WHEREFORE paragraph, including Plaintiffs' allegations of intentional discrimination and requests for relief, and further deny that Plaintiffs are entitled to any relief whatsoever, whether in law or in equity.

## **GENERAL DENIAL**

Defendants deny each and every allegation in Plaintiffs' Amended Complaint that is not

specifically admitted in this Answer.

## <u>AFFIRMATIVE AND OTHER DEFENSES</u>

Further answering, and in defense of Plaintiffs' Amended Complaint, Defendants state as follows:

1.     Plaintiffs' Amended Complaint, and each purported claim therein, fails to state a claim upon which relief can be granted.

2.     Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitation or other periods of limitation.

3.     Plaintiffs' claims are barred, in whole or in part, to the extent they failed to exhaust internal, contractual, and/or administrative remedies prior to filing their Amended Complaint.

4.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches, waiver, estoppel, and/or unclean hands.

5.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

6.     Plaintiffs' claims are barred, in whole or in part, because Defendants did not cause or contribute to any damages, loss, or injury allegedly sustained by Plaintiffs.

7.     All of the decisions made or actions taken by Defendants with respect to Plaintiffs were justified by legitimate, non-discriminatory, non-retaliatory, business reasons.

8.     Pleading in the alternative, any of the decisions made or actions taken by Defendants with respect to Plaintiffs were made/taken with the good-faith belief that such decisions and actions complied with all applicable laws.

9.     Pleading in the alternative, Plaintiffs' claims are barred because, even if an impermissible motivating factor had been a determining factor in any decision made or action

28

taken by Defendants, which Defendants specifically deny, Defendants would have made the same decision and/or taken the same action in the absence of any impermissible motivating factor.

10.     Pleading hypothetically and in the alternative, even if Plaintiffs were subjected to unwelcome conduct or harassment, which Defendants specifically deny, Defendants did not know and should not have known about the conduct.

11.     Pleading hypothetically and in the alternative, even if Plaintiffs were subjected to unwelcome conduct or harassment, which Defendants specifically deny, Defendants took reasonable steps to correct the situation and/or prevent the conduct from recurring.

12.     Pleading hypothetically and in the alternative, even if Plaintiffs were subjected to unwelcome conduct or harassment, which Defendants specifically deny, Plaintiffs unreasonably failed to properly take advantage of any preventive or corrective opportunities provided by Defendants or to avoid harm otherwise.

13.     Any injury to Plaintiffs, the existence of which Defendants specifically deny, was caused by Plaintiffs and/or by third parties over whom Defendants had no control.

14.     Any injury to Plaintiffs, the existence of which Defendants specifically deny, was not caused by an employee or agent of Defendants while acting in the course and scope of their employment with Defendants.

15.     Plaintiffs' claims fail because, at all times, Defendants acted in compliance with applicable policies and procedures. Defendants are not subject to liability because they have—and followed, with respect to Plaintiffs—effective policies in support of its non-discrimination and non-retaliation commitments and procedures for reporting and redressing any purported instances of discrimination on the basis of sex or gender.

16.     Pleading in the alternative, Plaintiffs' claims are barred, in whole or in part, by the doctrine of after-acquired evidence. To the extent after-acquired evidence is discovered, Plaintiffs' damages are cut off as of the time such after-acquired evidence is discovered.

17.     Plaintiffs seek remedies not applicable to their claims or outside of the remedies for which they would be eligible if they proved their claims.

18.     Any damage or harm suffered by Plaintiffs, which damage or harm Defendants expressly deny, was contributed to, caused by, or resulted from Plaintiffs' own actions and inactions.

19.     Plaintiffs' Amended Complaint is barred, in whole or in part, because any obligation by Defendants to pay compensation, whether contractual or otherwise, which Plaintiffs claim is owed, has been fully performed, satisfied, or discharged.

20.     Plaintiffs are not entitled to injunctive relief because they will not suffer irreparable harm in the absence of an injunction.

21.     No actions taken by Defendants were willful or wanton or made with evil motive or reckless indifference to the rights of others.

22.     Punitive damages are not recoverable in this action and Plaintiffs fail to state a claim upon which punitive damages may be granted.

23.     Plaintiffs are not entitled to any recovery of punitive damages against Defendants because an award of punitive damages would be an unconstitutional denial of Defendants' right to due process and/or equal protection under the Fifth and Fourteenth Amendments to the United States Constitution and under the Constitution of the State of Illinois.

24.     Defendants expressly deny each and every allegation in Plaintiffs' Amended Complaint not specifically admitted in this Answer.

25.     Because Defendants have yet to avail themselves of the right to discovery, and do not fully know the circumstances of the alleged incidents described in Plaintiffs' Amended Complaint, Defendants hereby notify Plaintiffs that, until they can avail themselves of discovery, it cannot be determined whether Defendants will assert the above-stated defenses at trial or whether those will be the only such defenses asserted. Such defenses are, however, asserted herein to preserve Defendants' right to assert such defenses and to avoid waiver of any such defenses. Defendants expressly reserve the right to plead any additional affirmative defenses as may become appropriate and/or necessary and thus reserve the right to amend their Answer and Affirmative Defenses to assert such defenses.

WHEREFORE, having fully answered Plaintiffs' Amended Complaint, Defendants Chicago State University, Captain James Maddox, and Lieutenant Charles Steward request that Plaintiffs' Amended Complaint be dismissed in its entirety, with prejudice, and for such other relief as this Court deems just and proper.

Respectfully submitted,

**HUSCH BLACKWELL LLP**

/s/ Lisa Parker
Lisa J. Parker (#6230008)
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
(312) 655-1500
(312) 655-1501 (Facsimile)
lisa.parker@huschblackwell.com

John W. Borkowski (#6320147)
1251 North Eddy Street, Suite 200
South Bend, IN 46617
(574) 239-7010
(574) 287-3116 (Facsimile)
john.borkowski@huschblackwell.com

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 8th day of April 2022, a copy of the above and foregoing document was filed with the Clerk of Court using the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

/s/ Lisa Parker

Lisa J. Parker
